Walter Gollotte, d/b/a Walter Gollotte Trucking, sued Peterbilt of Mobile, Inc., alleging that Peterbilt had failed to install an air filter in the engine of one of Gollotte's trucks when the truck was in Peterbilt's shop for repairs to a "dropped valve," and that, as a result, the engine had been damaged. Gollotte's complaint alleged both negligence and breach of contract by Peterbilt. Following discovery, Peterbilt filed a motion for summary judgment, which the trial court granted. Thereafter, Gollotte filed a motion to alter, amend, or vacate the summary judgment. The motion was denied and Gollotte appealed.
Gollotte argues that the trial court erred in entering the summary judgment because, he argues, there was substantial evidence that Peterbilt failed to install an air filter in Gollotte's truck. Gollotte also argues that the trial court erred in refusing to compel Peterbilt to produce documents relating to an investigation done by a Peterbilt employee. The trial court found that the documents were made in anticipation of litigation and were, therefore, a part of Peterbilt's work product.
The pertinent evidence in this case indicates that on August 17, 1988, Gollotte took a 1982 Kenworth K100 diesel tractor-truck to Peterbilt for repairs after the engine began "skipping," losing power, and blowing white smoke. Peterbilt determined that the problem with the truck was a dropped valve in the engine. In authorizing Peterbilt to make the necessary repair, Gollotte says, he instructed Peterbilt to "fix whatever needs repairing." Peterbilt repaired the dropped valve. On three later occasions in August and September 1988, Gollotte brought the truck back to Peterbilt for other repairs on specified items, such as the air conditioner, the motor mount, the lube refiner oil lines, the speedometer, the tachometer, and the fuel pressure mechanism.
On March 17, 1989, six months and 62,000 miles after Peterbilt's last repairs on the truck, the truck broke down. It was towed to Yankee Kenworth in Hartford, Connecticut, for repairs. Donald LaPlante, the service manager at Yankee Kenworth, stated in his deposition that when he inspected the truck after it had arrived at Yankee Kenworth, there was no air filter in the canister on the engine. LaPlante further stated that the cylinder walls of the engine were "extremely dusted" as a result of foreign materials entering the engine through the air intake system. Gollotte spent $6,777.40 to have the truck towed and repaired.
The principal question presented in this appeal is whether there was a genuine issue of material fact either as to whether *Page 461 
Peterbilt negligently failed to install an air filter in Gollotte's truck while the truck was being repaired for a dropped valve, or as to whether a contract existed between Gollotte and Peterbilt requiring Peterbilt to install an air filter in Gollotte's truck. There is no dispute that Gollotte suffered damage to his truck.
Initially, we note that a motion for summary judgment may be granted only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P.; Southern Guar. Ins. Co. v.First Alabama Bank, 540 So.2d 732, 734 (Ala. 1989). The burden is, therefore, upon the moving party to clearly show that there is no material fact in dispute, and all reasonable inferences from the evidence are to be viewed most favorably to the nonmovant. Southern Guar. Ins. Co., supra, at 734.
Rule 56 is read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. South-Trust Bank of Baldwin County,538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co.,547 So.2d 870, 871 (Ala. 1989).
In the present case, Peterbilt supported its motion for summary judgment with the following: (1) the deposition of Paul Marlow, the Peterbilt mechanic who worked on the truck in August 1988, wherein he states that when Peterbilt worked on the truck there was an air filter on it and that he personally inspected that filter and determined that there was no need to replace it with a new one; (2) the deposition of Larry Johnson, Peterbilt's service manager, who stated that the repair order, dated August 17, 1988, provided that Peterbilt was to check the engine for a possible dropped valve on Gollotte's truck and also stated that changing the air filter was not ordinarily part of repairing a dropped valve; (3) the deposition of Donald LaPlante, service manager for Yankee Kenworth, stating that if Gollotte had followed the engine manufacturer's recommended service checks, the damage to the engine could have been avoided, because, he stated, the engine's air filter should have been checked by the operator at least once every 12,000 miles.
In opposition to Peterbilt's motion for summary judgment, Gollotte, like Peterbilt, filed the depositions of Paul Marlow, Larry Johnson, and Donald LaPlante. In addition, Gollotte also filed the answers he had given to Peterbilt's first set of interrogatories, his dispatch sheets and his drivers' daily logs, and his own deposition, in which he stated that when he took his truck to Peterbilt in August 1988, he told the mechanics to "fix whatever needs repairing." Gollotte further stated in his deposition that shortly after the truck broke down, he checked the air filter canister and found that "the bolts hadn't even been off of it." He continued: "The paint was still new on it. See, before I bought [the] truck, Peterbilt had it painted. The nuts had never been even cracked on the air breather from the day I got it."
In response to a question regarding how often he changed the air filter in his trucks, Gollotte stated:
 "The only time we ever would even take [the truck] to get [the air filter] replaced would be if it had excessive smoking and a driver would complain about it. . . .
 "Normally when it gets like that, when it's blowing black smoke, it's a fuel filter. After that you go further into it, you know, you check other things: fuel pressure injectors, air filter. But if you correct it, one or the other, you don't even [replace the air filter]."
In order to prove a claim of negligence, a plaintiff must establish a breach of a duty owed by the defendant to the plaintiff which proximately caused damage to the plaintiff.Thompson v. Lee, 439 So.2d 113, 115 (Ala. 1983). Proof of injury *Page 462 
or damage alone is, therefore, generally insufficient to establish negligence. Id.
Here, Gollotte attempts to argue that because his truck broke down on March 17, 1989, as a result of the absence of an air filter, and because Peterbilt performed work on the truck on August 17, 1988, Peterbilt must have been negligent in its repair. However, we agree with the trial court that no duty was owed by Peterbilt to replace the air filter. Nothing in Gollotte's deposition testimony presents substantial evidence of a material fact to rebut the prima facie showing made by Peterbilt that summary judgment was proper, because his deposition does not establish that Peterbilt owed a duty to him to replace the air filter element in his truck engine when the truck was in Peterbilt's shop for repairs in August 1988.
We also do not agree with Gollotte's argument that Paul Marlow's deposition testimony shows that Peterbilt owed a duty to Gollotte regarding replacement of the air filter. Although Marlow testified that he voluntarily inspected the air filter element and found it to be "about brand new," we find nothing in his testimony that indicates that he inspected the air filter because he had a duty to do so. Furthermore, Marlow's testimony regarding his inspection of the air filter is contradicted by Gollotte's own deposition testimony wherein he stated that based upon his inspection of the truck's air filter canister, he believed that the bolts had not been loosened since before he had purchased it.
The evidence presented to the trial court causes us to agree that the summary judgment was properly entered on the question of negligence.
As to Gollotte's claim alleging breach of contract, we find that it too must fail because of the lack of substantial evidence that a contract existed between Gollotte and Peterbilt requiring the installation of an air filter element in the truck as a part of the work Peterbilt performed or agreed to perform for Gollotte during August and September 1988.
The second issue raised by Gollotte regards the propriety of a discovery order by the trial court refusing to compel Peterbilt to produce certain notes made during an investigation by its service manager after Gollotte's complaint was filed. Peterbilt contends that the discovery order is not properly before this Court on appeal because, it argues, the order was not expressly mentioned in the notice of appeal, and Gollotte's intention to appeal as to that order cannot be reasonably inferred from the text of the notice.
Gollotte's notice of appeal, filed on July 24, 1990, reads, in pertinent part, as follows:
 "Notice is hereby given that the plaintiff, Walter Gollotte, appeals to the Supreme Court of Alabama from the order of the Circuit Court of Mobile County, Alabama, granting the defendant's motion for summary judgment dated May 9, 1990, and from the order of the Circuit Court of Mobile County dated June 15, 1990, which denied plaintiff's motion to reconsider its order dated May 9, 1990, granting defendant's motion for summary judgment."
This Court has, on many occasions, manifested a willingness to construe notices of appeal liberally. See, e.g., Curtis v.Bill Byrd Automotive, Inc., 579 So.2d 590 (Ala. 1990). InEdmondson v. Blakey, 341 So.2d 481, 483 (Ala. 1976), this Court observed that Rule 3(c), A.R.App.P., like its federal counterpart, provides for a simple notice of appeal specifying the party or parties taking the appeal and states that the notice shall designate the judgment, order, or part thereof appealed from. Rule 3(c); Edmondson, supra, at 483. The federal courts have been very liberal in entertaining appeals even where the notice fails to comply literally with the requirements of Rule 3(c). Edmondson, supra, at 483. The test for dismissal for failure to comply seems to be whether the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice. Id.
In Threadgill v. Birmingham Board of Education, 407 So.2d 129
(Ala. 1981), this *Page 463 
Court considered a question similar to that presented here. There, the trial court granted summary judgment on December 17, 1980, for the defendant school board, but the summary judgment in favor of the co-defendant superintendent was not entered until March 12, 1981. Id. at 131. Threadgill's notice of appeal stated that she was appealing from the order of March 12, 1981.Id. This Court, quoting Edmondson, supra, held that Threadgill had appealed from a specified judgment or only a part thereof and that this Court had no jurisdiction to review other judgments or issues that were not expressly referred to and that were not impliedly intended for appeal. Id. at 132.
Gollotte appealed from the final judgment entered against him. Until that judgment was entered, the ruling on the discovery order was not subject to appeal. The entry of a final judgment made all rulings leading up to that judgment subject to appeal, and an appeal from that judgment allows the appellant to argue on appeal any alleged error at any point in the proceedings that led to that judgment. See Rule 3(c), A.R.App.P. The discovery order in this case is, thus, very different from the summary judgment for the school board inThreadgill; that summary judgment was in no way incorporated into, or a necessary element leading up to, the summary judgment for the superintendent, even though it was the entry of the later summary judgment that made the first one final and appealable. Therefore, we will address the issue whether Gollotte should have had access to certain documents and notes made by Peterbilt, which Peterbilt insists were made in anticipation of litigation and were, therefore, its work product.
The record reveals that in August 1989, Gollotte noticed the deposition of Peterbilt's employee, Larry Johnson, and attached to the notice a subpoena duces tecum requesting production of any and all notes, correspondence, reports, or other documents made during Peterbilt's investigation of this incident. Peterbilt immediately filed its objection to Gollotte's request for materials relating to its investigation, stating that the information had been prepared in anticipation of litigation and was, therefore, a part of its work product. Gollotte moved to compel discovery. The trial court denied the motion. Gollotte moved the court to reconsider its denial. The trial court, thereafter, ordered Peterbilt to produce those documents that had been prepared by Peterbilt prior to the filing of a complaint by Gollotte.
Gollotte insists on appeal that he was entitled to discovery of the documents he had requested and that the trial court abused its discretion in not allowing discovery of the notes and other documents made by Peterbilt after suit was filed. However, Gollotte failed to comply with Rule 56(f), A.R.Civ.P., and Peterbilt contends that Gollotte's failure to comply makes his discovery request moot.
A question similar to that presented under the facts relating to this issue was answered by this Court in Government St.Lumber Co. v. AmSouth Bank, N.A., 553 So.2d 68 (Ala. 1989). There, this Court, quoting Reeves v. Porter, 521 So.2d 963, 965
(Ala. 1988), noted that the mere pendency of a discovery request does not bar the entry of a summary judgment. The Court further held that if the trial court can ascertain from the record that the matter sought by a discovery request was crucial to the nonmovant's case, then it would be error for the trial court to enter a summary judgment before the items had been produced. Government St. Lumber Co., supra, at 71. TheGovernment St. Lumber Co. Court went on to state that the burden of showing that these items are crucial is upon the nonmoving party. Id.
In the present case, the trial court's adverse ruling on Gollotte's discovery motion placed upon Gollotte the burden of persuading the trial court that the discovery he sought was, or might be, crucial to his opposition to Peterbilt's motion for summary judgment. We do not find where Gollotte met his burden of showing that the items not produced were crucial to his case, and we are otherwise unable to determine, from the record before us, that they were crucial. Therefore, we find that the *Page 464 
issue of whether the trial court abused its discretion in relation to the discovery order is moot because Gollotte did not comply with Rule 56(f) by proving that the matter sought by discovery was or might be crucial to his opposition to Peterbilt's motion for summary judgment.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and ALMON, ADAMS and STEAGALL, JJ., concur.