On May 29, 2002, Ronald D. Veteto ("Veteto") sued Swanson Services Corporation ("Swanson") and, "in both their individual and official capacities," Michael Haley, commissioner of the Alabama Department of Corrections ("DOC"); Billie Mitchem, warden of the William E. Donaldson Correctional Facility, a prison operated under the auspices of DOC and located in Bessemer, Alabama; Hurbert Etheridge, a captain at Donaldson; and Officer Marion C. Espy, a correctional officer *Page 758 
supervisor II at Donaldson (Haley, Mitchem, Etheridge, and Espy are hereinafter referred to collectively as the DOC defendants). The trial court entered a summary judgment in favor of the DOC defendants and dismissed for want of prosecution the claims against Swanson. We affirm.
Veteto, an inmate at Donaldson, alleged in his complaint that he had completed Swanson order forms distributed to inmates by Donaldson employees for the purpose of selecting items, to be paid for by his parents, available to inmates under Swanson's "Holiday Package Program." The order forms represented that orders received by November 13, 2000, would be delivered between December 11 and December 22, 2000. Veteto's parents subsequently completed their portion of the forms and mailed them to Swanson along with an "official" bank check made out to the order of Swanson in the amount of $158.68. Veteto did not receive his holiday packages during the promised time frame; they were finally delivered on January 5, 2001. Donaldson employees checked the contents of the packages, but, according to Veteto, they "rushed the process," comingling the contents, thereby failing to detect "some of the shortages and overages" that Veteto subsequently determined to exist in the packages. Veteto determined that a number of items were missing, that some items were included that he had not ordered, and that various items of candy and snack foods were damaged or degraded. Veteto concluded that the total value of the shortages was $40.09.
Veteto alleges that he made numerous, but unsuccessful, attempts to locate Swanson and communicate with it about the situation, and that he also sent written communications about the situation to various Donaldson employees and to Commissioner Haley. Etheridge finally reported to Veteto that Donaldson employees were "in the process of resolving this now"; that the full amount of Veteto's purchases would be refunded; and that Donaldson would remedy the problem.
In addition to making numerous factual assertions against Swanson and asserting a variety of theories of legal liability against it, Veteto asserted that the DOC defendants "conspired with and/or aided and abetted" Swanson in its breach of contract and tortious wrongdoings. Veteto sought actual damages for breach of contract in the amount of $40.09; $20,000 in compensatory damages against Swanson "for hungry, sickness, mental pain and anguish, and emotional distress"; $10,000 in compensatory damages against the DOC defendants "for conspiring with and aiding and abetting Swanson"; and $50,000 in punitive damages against Swanson and the DOC defendants.
On September 4, 2001, the DOC defendants filed a motion to dismiss, or, alternatively, for a summary judgment. The motion was accompanied by the affidavit of Espy, who attested that, after he became aware of the problems with Veteto's packages, he had checked with Swanson and had been told that it was "working on resolving all disputes concerning refunds" and that "Veteto's name was on the list for a refund." Espy gave Veteto Swanson's address so that his parents could correspond directly with Swanson. The DOC defendants argued various legal points in a supporting brief, including their immunity from suit and that there had been no "material breach of contract."
Veteto made filings in opposition to the DOC defendants' summary-judgment motion, and there was a succession of responses and motions and other filings between him and the DOC defendants. Given our disposition of this appeal as to the DOC defendants, we will note hereinafter *Page 759 
only those filings relating to or made by Swanson.
On September 25 Swanson filed its answer. Shortly after it filed its answer, it filed its responses to Veteto's requests for admissions. Swanson subsequently filed its responses to Veteto's first set of interrogatories and his "first request of documents." Veteto filed objections to the DOC defendants' summary-judgment motion, and on November 28, 2001, the trial court entered its order, finding that the DOC defendants were entitled to immunity, on the grounds that Veteto "failed to present any evidence which would create a genuine issue of material fact on the question of whether [the DOC defendants] acted willfully, fraudulently, maliciously, or in bad faith" and therefore were not entitled to immunity. The trial judge later denied Veteto's motion to set aside that order. Subsequently, Veteto unsuccessfully petitioned the Court of Civil Appeals for a writ of mandamus, sought a rehearing as to its denial of the writ, petitioned this Court for a writ of mandamus, and sought a rehearing of its denial of the petition.
On December 9, 2002, on Swanson's motion, the trial court dismissed the case with prejudice for want of prosecution. Veteto filed a motion to vacate that order, which the trial judge denied on February 16, 2003.
Fatal to our consideration of Veteto's arguments in his appellate briefs concerning alleged trial court errors relating to the DOC defendants is the content of his handwritten notice of appeal. The front side of the notice of appeal reads, in its entirety, as follows:
 "Notice is hereby given that the Plaintiff, Ronald D. Veteto, appeals to the Supreme Court of Alabama from the dismissal of this civil action with prejudice for want of prosecution, entered in this action by the trial court December 9, 2002, and from the denial of Veteto's Rule 59, Ala. R. Civ. P., postjudgment motion entered February 16, 2003.
 "Veteto further moves this court for leave to proceed on this appeal in forma pauperis pursuant to Rule 24, Ala. R.App. Proc., and to direct the clerk of court to prepare and transmit the entire clerk's record to the appellate court. In support of this motion Veteto submits the following affidavit.
"[See Reverse Side]"
(Emphasis in original.) The reverse side of the notice of appeal contains Veteto's affidavit relating to his request "to proceed on appeal without being required to prepay fees, costs or give security therefor." It also contains the following statements:
 "[T]he issues which I desire to present on appeal are the following: (1) Plaintiff has been denied effective and meaningful access to the courts and a full and fair opportunity to present and prove his evidence, arguments and claims. (2) The trial judge denied Veteto the right to any and all discovery. (3) The trial judge pretermitted and never ruled on numerous critical and pivotal plaintiff motions. (4) The trial judge refused to recuse himself."
In Edmondson v. Blakey, 341 So.2d 481 (Ala. 1976), this Court addressed a similarly structured notice of appeal. Edmondson sued Blakey and the Aetna Casualty Company. On September 5, 1975, the trial court granted Aetna's motion for a summary judgment. The case proceeded to trial against Blakey, resulting in a verdict in his favor. A judgment was rendered on that verdict on September 30, 1975. Edmondson filed a motion for a new trial, which was denied on November 25, 1975. *Page 760 
He thereafter timely filed the following notice of appeal:
 "`NOTICE OF APPEAL TO THE COURT OF CIVIL APPEALS OF ALABAMA
 "`WADE Q. EDMONDSON In the Circuit Court of Autauga County "`Appellant Civil Action No. 3750 "`Vs. September 30, 1975 Date of Judgment 
"`K.E. BLAKEY November 25, 1975 "`Appellee Post Judgment Order
 "`Notice is hereby given that Wade Q. Edmondson appeals to the above-named court from the final judgment and the order dismissing his Motion for a New Trial entered in this cause.
 "`Security for costs of appeal is filed herewith this Notice of Appeal.'"
341 So.2d at 482-83.
This Court determined that the notice of appeal did not serve to effect an appeal of the September 5, 1975, summary judgment entered in favor of Aetna. The Court gave the following rationale for that conclusion:
 "Aetna insists that the first notice it received which in anyway indicated that the trial court's action on its motion for summary judgment was being challenged was when its attorney, who also represented Mr. Blakey, received a copy of Edmondson's brief in this case. There is nothing in the notice of appeal to indicate that Aetna is an appellee; and it affirmatively indicates that the judgments appealed are those dated September 30, 1975, and November 25, 1975, and are described as the final judgment and order dismissing his motion for a new trial. These judgments related only to the defendant Blakey. The trial court's judgment granting the motion for summary judgment at Aetna's request was entered September 5, 1975. That judgment is not alluded to in any manner in the notice of appeal and only Blakey is referred to as an appellee. The notice does not even contain the traditional `et al.' to indicate multiple appellees.
 "Our [Ala. R.App. P.] 3(c), like its federal counterpart, provides for a simple notice of appeal specifying the party or parties taking the appeal. The rule says that the notice ` . . . shall designate the judgment, order or part thereof appealed from . . .' The federal courts have been very liberal in entertaining appeals even where the notice fails to comply literally with the requirements of Rule 3(c). The test for dismissal for failure to comply seems to be whether the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice. Jones v. Chaney James Const. Co., 399 F.2d 84 (5th Cir. 1968); Donovan v. Esso Shipping Co., 259 F.2d 65 (3rd Cir. 1958).
 "Several federal decisions have concluded that [ Fed.R.App.P.] 3(c), although given its liberal interpretation by the courts, requires that in a multi-party suit, the notice of appeal must, to be effective, include the names of those parties taking the appeal. Van Hoose, et al. v. Eidson, et al., 450 F.2d 746 (6th *Page 761 
Cir. 1971); Cook Sons Equipment, Inc. v. Killen, 277 F.2d 607 (9th Cir. 1960).
 "While we might not be willing to go so far as to require the designation of each appellee in the notice of appeal, we do think that fairness requires that some indication appear that an appeal has been taken to reverse a judgment rendered in favor of a prevailing party. From the notice here, there is absolutely nothing to indicate that the judgment in favor of Aetna has been appealed. The notice not only fails to list Aetna as an appellee, but also affirmatively shows that the only two judgments being appealed are those involving only the appellee Blakey.
 "This conclusion probably would not be warranted in a case involving a single appellee. A notice of appeal indicating that an appeal has been taken from a judgment favorable to the appellee should give him notice that review might be sought as to matter not specified in the notice of appeal. In fact, that is contemplated by [Ala. R.App. P.] 3(c).
 "The spirit of the [Alabama Rules of Appellate Procedure] is recognized and restated to insure the just, speedy and inexpensive determination of every appellate proceeding on its merits. The only jurisdictional rule in the entire rules is the timely filing of the notice of appeal. Nothing in the rules is designed to catch the unwary on technicalities. Jones v. Chaney James Const. Co., supra. A simple statement indicating what judgments the appellant appeals from is all that is required. In this case, the appellant has indicated that he appeals from two judgments rendered against him and in favor of the defendant Blakey. To treat this as an appeal from a judgment in favor of Aetna is to give more than a liberal construction to [Ala. R.App. P.] 3(c). It is to read into the notice of appeal something which is simply not there. This would be unfair to Aetna. Appellant could have included Aetna in the designated appellees, or could have indicated that he was appealing from the judgment favorable to Aetna. He has done neither. Furthermore, had the appellant included in the notice of appeal a designation of the record to include the order entered on the motion for summary judgment as contemplated by Form # 1, this may well have constituted notice to Aetna that that judgment was being appealed. However, the appellant failed to do that. Instead, he simply says, in response to Aetna's motion to dismiss the appeal, that he designated the entire record; and it includes the order granting Aetna's motion for summary judgment.
 "The failure of the appellant to either (1) include Aetna as a named appellee; or (2) to indicate by description or date that the appeal was from the order granting Aetna's motion for summary judgment; or (3) indicating by designation that that order was being challenged; compels us to conclude that there is nothing in the notice of appeal or otherwise manifesting an intent to appeal from the summary judgment order entered in favor of Aetna."
341 So.2d at 483-84.
Five years after Edmondson, we addressed a similar situation in Threadgill v. Birmingham Board of Education, 407 So.2d 129
(Ala. 1981). The plaintiff, Lynn Marie Threadgill, filed a personal-injury action against the Birmingham Board of Educationand its superintendent, Wilmer S. Cody. The trial court entered a summary judgment for the board on December 17, 1980, and a summary judgment for Cody on March 12, 1981. This Court noted that Threadgill's subsequent notice of appeal stated, "in pertinent part": *Page 762 
 "`Notice is hereby given that Lynn Marie Threadgill appeals to the Supreme Court of Alabama from the order of the trial court of March 12, 1981 in granting the motion for summary judgment, said motion being filed on or about the 2nd day of March 1981.
 "`Filed with this Notice of Appeal are security for costs of appeal and docket fee in the amount of $50.00.
"`FILED: Apr 23, 1981. . . .'"
407 So.2d at 131.
This Court observed:
 "Nowhere in plaintiff's notice of appeal does she indicate that she is appealing from the circuit court's order of December 17, 1980, dismissing the Birmingham Board of Education as a party to plaintiff's action. The only reference that arguably might be said to include the Birmingham Board of Education in the notice of appeal is the style of the notice which recites `Lynn Marie Threadgill, Appellant v. Birmingham Board of Education, et al.'"
407 So.2d at 131.
Quoting from Edmondson, supra, the statement that "`[t]he test for dismissal for failure to comply seems to be whether the intention to appeal from a specific judgment may be reasonably inferred from the text of the notice,'" 407 So.2d at 132
(emphasis omitted), this Court continued with the following analysis:
 "Applying the above-quoted test, the question which next arises is whether plaintiff's notice of appeal reasonably evidenced an intent to appeal from the trial court's order dismissing the Birmingham Board of Education as a party to her action. We think that it did not. Plaintiff's notice of appeal designates only the circuit court's order of March 12, 1981, which involved only Cody, and not the Birmingham Board of Education. We are aware that one difference does exist between the present appeal and the factual situation considered in Edmondson v. Blakey [, 341 So.2d 481 (Ala. 1976)]. The style of plaintiff's notice of appeal names the Birmingham Board of Education. Appellant's style in his notice of appeal in Edmondson v. Blakey did not name defendant Aetna. Nevertheless, this distinction does not help plaintiff. Rule 3, Alabama Rules of Appellate Procedure, provides an uncomplicated means of effecting an appeal. It is not designed `to catch the unwary on technicalities.' Edmondson v. Blakey, at 484; Jones v. Chaney James Construction Company, 399 F.2d 84 (5th Cir. 1968). `A simple statement indicating what judgments the appellant appeals from is all that is required.' Edmondson v. Blakey, at 484. The thrust of plaintiff's notice of appeal is that she is appealing from the circuit court's order and judgment of March 12, 1981.
 "`Where the appellant notices the appeal of a specified judgment only or a part thereof, however, this court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.'
 "C.A. May Marine Supply Company v. Brunswick Corporation, 649 F.2d 1049 (5th Cir. 1981); Elfman Motors, Inc. v. Chrysler Corporation, 567 F.2d 1252
(3d Cir. 1977); Donovan v. Esso Shipping Company, 259 F.2d 65 (3d Cir. 1958)."
407 So.2d at 132.
In Gollotte v. Peterbilt of Mobile, Inc., 582 So.2d 459 (Ala. 1991), the plaintiff sued only one defendant and the trial court entered a summary judgment for that defendant. In his subsequent notice of appeal, the plaintiff clearly stated that he was appealing from the summary judgment, *Page 763 
giving the date summary judgment was entered, and from the later order denying the plaintiff's motion to reconsider, giving the date of the entry of that order. This Court held that the notice of appeal would not limit the scope of appellate review so as to preclude consideration of an earlier discovery order entered by the trial court. Noting the Edmondson test, and its application in Threadgill, supra, the Court concluded that the issue relating to the discovery order could be reached. It distinguished the facts and holding of Threadgill on the basis that
 "[t]he discovery order in this case is . . . very different from the summary judgment for the school board in Threadgill; that summary judgment was in no way incorporated into, or a necessary element leading up to, the summary judgment for the superintendent, even though it was the entry of the later summary judgment that made the first one final and appealable."
582 So.2d at 463. The Gollotte Court reiterated the holding ofEdmondson, however, that, in a case such as the present one, "this Court [has] no jurisdiction to review other judgments or issues that were not expressly referred to and that were not impliedly intended for appeal." 582 So.2d at 463.
Likewise, in M.R.V. Enterprises, Inc. v. Mariott FamilyRestaurants, Inc., 584 So.2d 522 (Ala. 1991), this Court quoted approvingly, and dispositively for that case, the following statement in Threadgill: "`Where the appellant notices the appeal of a specified judgment only or a part thereof . . ., this Court has no jurisdiction to review other judgments or issues which are not expressly referred to and which are not impliedly intended for appeal.'" 584 So.2d at 524 (quoting Threadgill,407 So.2d at 132).
"It is settled law that notice of appeal from a judgment in favor of two or more parties must specifically name each party whose judgment the appellant wishes to overturn." Sperau v. FordMotor Co., 674 So.2d 24, 40 (Ala. 1995), judgment vacated, FordMotor Co. v. Sperau, 517 U.S. 1217, 116 S.Ct. 1843,134 L.Ed.2d 945 (1996) (citing Edmondson and Threadgill, and an opinion of the United States Court of Appeals for the Fifth Circuit).
The record here reflects that the circuit clerk understood that the appeal was being taken only as to Swanson; consequently, the clerk apparently did not send notice of the appeal to the DOC defendants. Swanson's motion to dismiss for want of prosecution, served on Veteto, reflected clearly that Swanson was serving the motion on only Veteto, not the DOC defendants, and none of Veteto's filings subsequent to the November 28, 2001, dismissal of the DOC defendants reflect that he served a copy of those filings on the DOC defendants. Everything filed with the clerk of this Court, with the exception of Veteto's briefs, reflects Swanson as the sole appellee. Consequently, the style of this appeal reflects that only Veteto and Swanson are parties to the appeal.
Neither of Veteto's briefs filed in this Court contains a certificate of service indicating that he served a copy of the briefs on the DOC defendants, and, consistent with its understanding of the structure of this appeal, Swanson stated in its brief that it was "the sole Appellee" and served a copy of its brief only upon Veteto. In his reply brief, Veteto took note of Swanson's statement that it was the only appellee and argued that the appeal did extend to the DOC defendants because his notice of appeal repeated the trial court's style of the case: "Ronald D. Veteto, Plaintiff v. Swanson Services Corp., et al., Defendants." Under the reasoning of Threadgill, *Page 764 
supra, 407 So.2d at 132, this oblique reference to the DOC defendants is not sufficient to put anyone on notice that the appeal was being taken as to them in addition to being taken from the two specific judgments referenced as the subjects of the appeal, which involved only Swanson.
As explained in Gollotte, supra, 582 So.2d at 463, a summary judgment entered in favor of one defendant in a two-defendant lawsuit, followed by a dispositive ruling in favor of the second defendant, is, under the circumstances involved in bothGollotte and this case, "in no way incorporated into, or a necessary element leading up to" the subsequent judgment in favor of the codefendant. This is so even though the entry of the later dispositive judgment made the first one final and appealable. As noted in both Edmondson, supra, and Threadgill, supra, Rule 3(6), Ala. R.App. P., specifying the form of the notice of appeal, is not designed "to catch the unwary on technicalities," but rather, under Rule 3(6), "[a] simple statement indicating what judgments the appellant appeals from is all that is required." (Edmondson, 341 So.2d at 484, and Threadgill,407 So.2d at 132.) Rule 3, Ala. R.App. P., "provides an uncomplicated means of effecting an appeal." Threadgill, 407 So.2d at 132.
As noted, Veteto has already previously filed petitions for a writ of mandamus in both the Court of Civil Appeals and this Court during the course of this case. In his briefs in this appeal, he cites, and intelligently discusses, the holdings in 32 cases from the Alabama Court of Civil Appeals, the Court of Criminal Appeals, this Court, numerous federal circuit courts of appeals, and the United States Supreme Court, along with numerous federal and state constitutional and statutory provisions. We note that Veteto has been a frequent and prolific filer of appeals and various petitions in the Court of Civil Appeals, the Court of Criminal Appeals, and this Court. The records of this Court for only the years 1999, 2000, 2001, and 2002, indicate that during that period Veteto has petitioned this Court for a writ of certiorari in four civil proceedings instituted by him in the Jefferson Circuit Court and the Escambia Circuit Court involving unrelated claims and unrelated defendants.[1] In a letter to the circuit clerk in this case, Veteto advised that he has "filed numerous lawsuits in many different jurisdictions and venues. . . ." Clearly he is no pro se "naif" incapable of ascertaining how he should designate in his notice of appeal the particular judgments to which the appeal is directed. He knew that the DOC defendants were being represented by two assistant attorneys general, whose names and addresses were provided. As far as the record reflects, the attorney general has received no notification of the pendency of this appeal, and he has not filed an appearance in it.
Accordingly, because Veteto specifically stated in his notice of appeal that he was appealing "from the dismissal of this civil action with prejudice for want of prosecution, entered in this action by the trial court December 9, 2002, and from the denial of the Veteto's Rule 59, Ala. R. Civ. P., postjudgment motion entered February 16, 2003," and because he did not indicate any intention to appeal from the earlier, completely separate, summary judgment in favor of the DOC defendants, we hold *Page 765 
that the propriety of that judgment is not before us.
Turning next to Veteto's claim against Swanson, we find the following facts dispositive.
Veteto alleged numerous claims and grievances against Swanson in his complaint, including various tort theories and breaches of contract. Commencing on October 30, 2001, and continuing intermittently thereafter, Veteto filed numerous motions seeking to have the trial court compel discovery from Swanson. Swanson filed responses to each item of written discovery propounded by Veteto. None of Veteto's written discovery is contained in the record. When he filed a motion to compel discovery on November 13, 2001, seeking an order compelling Swanson to "properly answer" his first set of interrogatories and to produce the "documents and things" he had requested, Veteto did not file the relevant portions of any of his interrogatories or production requests as is permitted by Rule 5(d)C., Ala. R. Civ. P. Veteto did loosely describe in his motion the general thrust of eight interrogatories, but not in such a way that the trial judge could have reviewed the motion and understood exactly the content of the interrogatories in question.
Subsequently, Veteto purported to amend his complaint. The trial judge struck the proffered amendment and also granted Swanson's pending motion to compel Veteto to answer its interrogatories and to respond to its requests for production. Veteto never provided such responses or answers. Several times Swanson filed responses to Veteto's motions to compel to explain that Swanson did not have in its possession the documents sought, except for one produced receipt. Swanson stated in a response that it had "produced every relevant document in its possession in an effort to provide full discovery to the plaintiff."
At various times Swanson moved to take Veteto's deposition, and he counter-moved to have an exchange of depositions at the prison where he was incarcerated, whereby Swanson's "designated representative" would appear and produce broadly described records. Neither deposition was ever taken.
On July 24, 2002, the trial judge set the case for trial on December 9, 2002, and timely issued notice of the trial date to Veteto and Swanson. On August 15, 2002, Veteto filed a motion for a summary judgment, supported only by references to the complaint and the fact that outstanding discovery matters remained. In that motion Veteto purported to recite 10 interrogatories to which Swanson had responded but not answered, and he made a request that documents relating to 8 of the interrogatories be produced. This motion was not ruled upon before the scheduled trial date.
On November 27, 2002, Veteto moved for a continuance of the trial because he had "received no responses to his numerous discovery request, except for a few request for admissions," and because the trial court had "ignored and refused to rule on and decide numerous, crucial and outstanding motions." Further, Veteto moved the court to order Swanson immediately to schedule and participate in an exchange of depositions.
On December 5, 2002, Veteto filed his handwritten "Deposition of Ronald D. Veteto," in which he recounted and criticized various actions and inactions of various DOC personnel, including the previously dismissed DOC defendants; the shortages and damaged condition of the contents of his holiday packages; and Swanson's inability to produce the original purchase orders and other documents, allegedly constituting *Page 766 
spoliation of material evidence. He also claimed damages for shortages and damaged food items totaling $83.86; and he asserted that he suffered "hunger, sickness, depression, worry, anxiety, emotional distress and mental anguish" from the deficient nature of the packages and his attempts subsequently "to ascertain, understand and remedy the problem against the conspiracy and concealment of the defendants." Veteto handprinted at the end of his "deposition" a notarization form dated November 26, 2002, but then inserted in the signature blank provided for the notary public his comment, dated December 3, 2002, that "despite my repeated written and oral requests the assigned notary refused to notarize this document."
On December 9, 2002, the appointed trial date, Veteto failed to appear either in person or by counsel and failed to present any admissible evidence, including his own deposition, for consideration at a trial. Swanson moved the court to dismiss the case for want of prosecution. Swanson cited three opinions of this Court that it said stand for the proposition that an incarcerated individual who undertakes to proceed as a plaintiff in a civil action unrelated to his confinement is not entitled to a court order making provisions for his personal appearance at trial but rather must present his own oral or written deposition to be used at trial. On that same day, the trial court entered an order dismissing Veteto's case with prejudice "for want of prosecution," citing Hines v. City of Mobile, 480 So.2d 1203
(Ala. 1985), one of the cases cited by Swanson. In Hines, this Court stated:
 "Hines argues that the trial judge erred in dismissing the case for want of prosecution because a layman should not be held to the standard of a lawyer in knowing how to secure his own presence or testimony at trial. This issue has been raised and rejected in prior cases. We have held that a prisoner has no right to appear in person in the trial of a civil suit unrelated to his confinement. We pointed out that a prisoner could take his own oral or written deposition under Rule 30 or 31, [Ala.]R.Civ.P., to be used at trial pursuant to Rule 32(a)(3)(C), [Ala.] R. Civ. P."
480 So.2d at 1204.
On January 3, 2003, Veteto filed a motion to vacate the judgment and for a new trial, directed at the December 9 order dismissing his case for want of prosecution; he included in the motion the following elaboration upon his inability to procure notarial services before he transmitted his "deposition":
 "I finished the deposition on November 25, 2002, and immediately notified the Law Librarian employee Guthrie, to notarize my deposition and signature. He told me that he did not yet have his license and for me to get employee [Patrice] Richie, who is licensed to notarize my document. I sent one inmate request to Richie, via an employee and another via the Intra-Facility Mail System requesting that she notarize my deposition `ASAP.' I never heard from her and, fearing my deposition may be untimely, mailed it unnotarized on December 3, 2002. On December 4, 2002, Richie summoned me to the Segregation Office for the purpose of notarizing my already mailed deposition. When I asked her the date on the request, Richie admitted that it was November 27, 2002, but said she had just received my request for notarization. I do not believe that she never received the one request from the employee and the other request had taken a week to move 200 feet through the intra-facility mail system. Nevertheless, I cannot be *Page 767 
faulted for the lack of notarization of my deposition."
Veteto declared in the motion "under penalty of perjury that the facts, statements, and information given in my [deposition] . . . [are] true and correct." This motion was "sworn to and subscribed before" notary public Patrice R. Richie on December 31, 2002, and her official seal is affixed. Notably, Veteto does not explain why, on December 4, he did not take advantage of Richie's offer to notarize his deposition and submit a notarized verification of the deposition he had mailed the day before.
The trial judge denied Veteto's motion on February 16, 2003, and this appeal followed.
A long line of opinions of this Court and the Court of Civil Appeals have explained that an incarcerated civil plaintiff is not entitled to be brought from the penitentiary to testify in his own behalf. The proper remedy is for the incarcerated civil plaintiff to take his or her own testimony, either upon written questions under Rule 31, Ala. R. Civ. P., or upon oral examination under Rule 30, Ala. R. Civ. P.
This rule has been followed unwaveringly in such cases asLightfoot v. McDonald, 587 So.2d 936 (Ala. 1991); Clements v.Moncrief, 549 So.2d 479 (Ala. 1989); Hines, supra; Hubbard v.Montgomery, 372 So.2d 315 (Ala. 1979); and Whitehead v.Bi-Petro Marketing, Inc., 356 So.2d 150 (Ala. 1978). Rule 30, Ala. R. Civ. P., explains how a party wishing to take a deposition upon oral examination should proceed. Rule 31 explains how a deposition may be taken upon written questions. Both Rule 30(a) and 31(a) contain almost identical versions of the statement that "[t]he deposition of a person confined in prison may be taken only by leave of court and on such terms as the court prescribes." Rule 32(a)(3)(C) provides that "[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . that the witness is unable to attend or testify because of . . . imprisonment. . . ." See Whitehead v. Baranco Color Labs, Inc.,353 So.2d 793, 794 (Ala. 1977).
Veteto never sought leave of court for deposing himself either orally or upon written questions but rather simply unilaterally submitted a document that purported to be a deposition but that did not comply in any respect with the provisions of Rule 30 or 31. Under Rule 30(b)(4), failing a stipulation by the parties in that regard, "the court may upon motion order that the testimony at a deposition be recorded by other than stenographic means." Under Rule 31 the party desiring to take the deposition upon written questions must serve a notice upon every other party of the particulars of the deposition and also serve a copy of the written proposed questions. Veteto never sought leave of court to depose himself in any fashion. Rather, he simply prepared, in affidavit form, his "deposition" and then transmitted it, unnotarized. Thus, as of the December 9, 2002, trial date, there was nothing before the trial court that could have constituted Veteto's "prosecution" of the civil case.
As this Court stated in Hubbard, supra, 372 So.2d at 316, Veteto's "position results from his own actions and not those of the defendants or the court. Incarceration alone is no excuse to avoid a dismissal for want of prosecution." Had Veteto properly attempted to obtain leave of court to take his own deposition, a different result might well obtain. See Feagin v. Stokes,837 So.2d 857 (Ala.Civ.App. 2002), and McConico v. Culliver,872 So.2d 872 (Ala.Civ.App. 2003).
In his motion to vacate the judgment and for a new trial, Veteto makes the *Page 768 
general statement, without any explanation or citation to authority, that his lawsuit is "related to [his] confinement." This is contrary to the holding in McConico, supra, that the prisoner's tort claims against another inmate for assault; against a lieutenant and a deputy warden at the prison for an alleged "cover-up" of the assault and retaliatory actions; and against Commissioner Haley for alleged negligence in failing to train, and in promoting, the deputy warden, were all unrelated to the conditions of McConico's confinement. Likewise, inClements, supra, the prisoner sued several prison officials alleging that their negligence had resulted in the prisoner's injury on a piece of equipment at the prison. This Court treated those claims by the prisoner as being "unrelated to his confinement." 549 So.2d at 481. Moreover, Veteto does not present this issue in his primary brief on appeal, and in his reply brief he simply states in conclusionary fashion that he "did present a claim directly related to his confinement," without any elaboration or citation to authority.
Veteto's principal argument to this Court concerning the dismissal of his claims against Swanson for want of prosecution is that he "fully complied with Rules 30 or 31 and 32(a)(3)(C), Ala. R. Civ. Proc., by taking his self-deposition after notifying Swanson and submitting this deposition for consideration prior to trial." Nothing in the record suggests that Veteto notified Swanson of his intention to take his self-deposition, and the "deposition" he filed with the trial court was clearly non-compliant with Rules 30, 31, and 32. In his reply brief, Veteto asserts that he "did submit a self-deposition that was properly affirmed pursuant to 28 U.S.C. § 1746 and notarized as soon as possible thereafter. . . ." Veteto does not quote from28 U.S.C. § 1746 or explain how his purported self-deposition was "properly" affirmed in accordance with it, but again, the deposition was clearly not "on oath" as required by Rule 30(c) or Rule 31(b) (referencing Rule 30(c)).
We cannot accept Veteto's assertion that his deposition was notarized as soon as possible following its December 3 transmission. Veteto acknowledges that he could have had it notarized on the following day, yet chose to wait until December 31, 2002, after his case was dismissed for want of prosecution, to attempt a notarization before the same notary who had offered to notarize his document on December 4. As already explained, however, even if timely "notarized," the version of the "deposition" Veteto tendered would not have been admissible because of the Veteto's noncompliance with either Rule 30 or 31.
A dismissal for want of prosecution "`is a matter within the discretion of the trial court, and its judgment will be reversed on appeal only if there is an abuse of that discretion.' "Feagin, supra, 837 So.2d at 860 (quoting M.J.F. v. J.W.,680 So.2d 302, 303 (Ala.Civ.App. 1996)). This Court has held likewise in a number of cases, observing that a trial court has the inherent power to dismiss a cause for a want of prosecution and that the dismissal will be reversed only if it is shown that the trial court exceeded its discretion in dismissing the cause.Riddlesprigger v. Ervin, 519 So.2d 486 (Ala. 1987); andBurdeshaw v. White, 585 So.2d 842 (Ala. 1991). We conclude that the trial judge did not exceed his discretion in dismissing Veteto's claims against Swanson for want of prosecution at the scheduled trial date, given the state of the record at that time.
AFFIRMED.
SEE, BROWN, JOHNSTONE, and STUART, JJ., concur.
[1] "`This court takes judicial notice or has judicial knowledge of contents of its records with reference to its previous consideration of litigation presently before it.'"Morrow v. Gibson, 827 So.2d 756, 762 (Ala. 2002) (quotingFederal Deposit Ins. Corp. v. Equitable Life Assur. Soc.,289 Ala. 192, 194, 266 So.2d 752, 753 (1972)). *Page 769