On Application for Rehearing

BRYAN, Judge.
This court’s opinion of May 4, 2012, is withdrawn, and the following is substituted therefor.
Howard Ross appeals from summary judgments in favor of West Wind Condominium Association, Inc. (“West Wind”), and Joseph London III. We affirm.
On December 3, 2007, West Wind recorded instruments in the office of the Probate Judge of Madison County that gave notice that it claimed liens on four condominium units owned by Ross (collectively referred to as “the four condominium units”) based on his alleged failure to pay West Wind dues he owed on the four condominium units. The four condominium units were Unit A in building 3816 (“Unit A”), Unit J in building 3816 (“Unit J”), Unit C in building 3818 (“Unit C”), and Unit D in building 3818 (“Unit D”).
On January 18, January 25, February 1, and February 8, 2008, West Wind published notices in the Madison County Record, a local newspaper, stating that it would sell the four condominium units at foreclosure sales-on February 15, 2008. On February 15, 2008, West Wind conducted foreclosure sales of the four condominium units and made the highest bid on each of the four condominium units. That same day, the auctioneer who conducted the foreclosure sales on behalf of West Wind executed foreclosure deeds conveying the four condominium units to West Wind. On March 3, 2008, West Wind executed deeds conveying Unit A and Unit C to Jimmy D. Spruill and Cynthia I. Spruill, a deed conveying Unit J to London, and a deed conveying Unit D to Delvin Sullivan.
On April 18, 2008, Ross sued West Wind, London, the Spruills, and Sullivan. Ross alleged that, in April 2005, West Wind had agreed to give him a credit against the dues on the four condominium units in exchange for (1) his performing or paying for maintenance and repair work at the condominium and (2) his allowing a *32 maintenance man employed by West Wind to live in one of the four condominium units without paying rent. He further alleged that, in September 2006, West Wind had told him that it did not need him to perform or pay for any more maintenance or repair work and that he had paid the dues on the four condominium units from December 2006 through May 2007. He also alleged that, in May 2007, West Wind had returned his payments for April and May 2007; that West Wind had refused to accept those payments; that West Wind had foreclosed on the four condominium units without giving him any actual notice that it intended to do so; and that he had not learned of the foreclosures until after they had occurred.
Based on those factual allegations, Ross stated two claims. The first claim sought an order setting aside the foreclosure sales on the ground that West Wind had failed to give Ross proper notice that it intended to foreclose on the four condominium units and on the ground that West Wind had failed to give Ross the appropriate credit he was due against the dues on the four condominium units pursuant to his agreement with West Wind. The second claim sought redemption of the four condominium units. Shortly after filing his original complaint, Ross filed a first amended complaint that added the addresses of the four condominium units but was in all material respects identical to his original complaint.
On December 31, 2008, London moved for a partial summary judgment with respect to Ross’s claim seeking redemption. As the grounds of his motion, London asserted that Ross was not entitled to redeem Unit J from London pursuant to § 6-5-255, Ala.Code 1975,[1] because, London said, Ross had not paid or tendered payment of any money to London and that Ross was not entitled to redeem Unit J from London pursuant to § 6-5-256, Ala. Code 1975,[2] because, London said, Ross had neither demanded a written statement of lawful charges to redeem Unit J nor paid any money into court. London supported his summary-judgment motion with his affidavit. In pertinent part, it stated:
“I purchased the real estate which is made the basis of the plaintiffs complaint at a sale for unpaid condominium association dues.... I never received a demand for lawful charges, nomination or appointment of a referee, from the plaintiff, Howard Ross and/or his agents prior to being served with the complaint in the above-styled action. I have not been contacted at any point prior to, or during this litigation, by Howard Ross and/or his agents concerning their desire to redeem the real estate which is the subject of Howard Ross’s complaint.”
On February 28, 2009, Ross filed a written response to London’s partial-summary-judgment motion. Ross asserted that London was not entitled to a summary judgment with respect to Ross’s claim *33 seeking redemption because, Ross said, he could not determine the amount of the lawful charges to be tendered because West Wind had failed to inform him of the amount of the debt it was claiming he owed and, consequently, he had sought the equitable assistance of the trial court in determining the amount of the lawful charges. Ross also filed his affidavit in opposition to London’s motion. Ross’s affidavit stated:
“On or about April 2, 2005, ... I entered into an agreement with West Wind Condominiums, through its agent Charles Ragland, wherein the condominium association would accept maintenance and repairs performed by me on the condominium’s premises in lieu of my having to pay condominium dues. Around September of 2006,1 spoke with West Wind’s new president, Ray Hanson, who told me that further maintenance by me would not be necessary and that I should begin making my regular dues payments. I began making these payments in December of 2006 and made my regular payments for December 2006, January 2007, February 2007, and March 2007. West Wind accepted all these payments. When I made my payments for April and May of 2007, West Wind’s attorney, Mac Martinson, returned them to me with a letter saying West Wind would not accept the payments and requesting documentation that would dispute the charges being claimed by West Wind. I submitted an itemized list of charges for my work done through my attorney Patrick Jones, but I never received any further correspondence from West Wind. I subsequently tried to communicate with West Wind to determine the amount of dues that I would owe, taking into consideration my statement for work done. I also tried to contact several other West Wind board members to find out the dues that would be due. In February of 2008, West Wind foreclosed on the condominiums I owned, purchased the condominiums itself, and then sold the condominiums to the other defendants in the lawsuit. I learned of the foreclosures only when I ran into an attorney, Elizabeth Cvetetic.”
On March 25, 2009, Ross filed a second amended complaint, which added a claim of breach of contract against West Wind only, a claim of intentional interference with business or ' contractual relations “against the defendants,” and a claim of “unlawful detention of property” against the Spruills only. On March 30, 2009, London moved to strike Ross’s second amended complaint on the ground that it was untimely.
On April 13, 2009, Ross filed a response to London’s motion to strike the second amended complaint. Ross asserted that the second amended complaint was timely because, he said, it added claims that were based on events that had occurred after the filing of his original complaint and his first amended complaint. He also asserted that London was not prejudiced by the second amended complaint because, he said, the breach-of-contract claim was asserted against West Wind only, the claims of intentional interference with business or contractual relations and “unlawful detention of property” were asserted against the Spruills only, and, therefore, “none of the newly-added causes of action are pled against Defendant London....”
On December 30, 2009, the trial court entered an order granting London’s motion to strike the second amended complaint. On January 4, 2010, the trial court entered a summary judgment in favor of London as to all of Ross’s claims.
On January 29, 2010, Ross filed motions asking the trial court to reconsider its *34 rulings granting London’s motion to strike the second amended complaint and entering a summary judgment in favor of London as to all of Ross’s claims. In his motion to reconsider the ruling entering a summary judgment in favor of London as to all of Ross’s claims, Ross asserted that the trial court had erred by entering that summary judgment as to all of Ross’s claims because London’s partial-summary-judgment motion had challenged Ross’s claim seeking redemption only. The record does not contain a ruling by the trial court regarding Ross’s motions to reconsider the rulings granting London’s motion to strike and entering a summary judgment in favor of London as to all of Ross’s claims.
On June 8, 2009, the Spruills filed a partial-summary-judgment motion seeking a summary judgment with respect to Ross’s claim seeking redemption. The Spruills asserted the same grounds that London had asserted as the grounds of his partial-summary-judgment motion and supported their motion with their affidavits. Ross opposed the Spruills’ partial-summary-judgment motion and filed an affidavit that was identical to the affidavit he had filed in opposition to London’s partial-summary-judgment motion. On March 18, 2011, the trial court entered a summary judgment in favor of the Spruills as to all of Ross’s claims.
On March 28, 2011, West Wind moved for a summary judgment. As the ground of its motion, West Wind asserted that Ross owed unpaid dues on the four condominium units; that West Wind had given Ross notice that he owed unpaid dues on the four condominium units; that it had given him notice that it would place hens on the four condominium units if he did not pay the unpaid dues; that it had placed liens on the four condominium units due to Ross’s failure to pay dues on the four condominium units; that it had mailed a letter to Patrick A. Jones, an attorney representing Ross, stating that West Wind intended to foreclose on the four condominium units if Ross did not pay the unpaid dues by December 22, 2007; that it had published notice of the foreclosure sales in the Madison County Record once a week for four consecutive weeks; that it had purchased the four condominium units at the foreclosure sales; and that it had subsequently conveyed Units A and C to the Spruills, Unit J to London, and Unit D to Sullivan.
West Wind initially supported its summary-judgment motion with, among other things, copies of letters attorney Mac Mar-tinson, who then represented West Wind, had sent Ross in May 2007 notifying him of the amounts he owed on the four condominium units; copies of the liens it had filed on the four condominium units; a letter dated December 11, 2007, from Robert F. Vargo, an attorney who then represented West Wind, to Jones enclosing copies of the liens it had filed on the four condominium units and stating that West Wind would commence foreclosure proceedings if Ross did not pay the amounts owed by December 22, 2007; copies of the publisher’s affidavits executed by the Madison County Record certifying that it had published notices of the foreclosure sales on January 18, January 25, February 1, and February 8, 2008; copies of the foreclosure deeds conveying the four condominium units to West Wind; and copies of the deeds conveying Unit A and Unit C to the Spruills, Unit J to London, and Unit D to Sullivan.
On April 1, 2011, Ross filed a written response to West Wind’s summary-judgment motion. His response contained a “Narrative of Facts” as well as arguments in opposition to West Wind’s summary-judgment motion. In addition, Ross filed *35 a number of unauthenticated documents and an affidavit signed by him. In pertinent part, his affidavit stated: “All of the facts contained in my Plaintiffs Response to Motion for Summary Judgment and the Narrative Statement of Facts contained therein, are true and correct to my knowledge and belief.” Ross also submitted an affidavit signed by Jones, which stated, in pertinent part:
“1. I have not represented nor acted as attorney for Howard Ross in any matters between said Howard Ross and Westwind [sic] Condominium Association.
“2. I have no knowledge of receipt of any alleged notices or communications sent by Robert Vargo, attorney at law, to Howard Ross.”
Ross’s response to West Wind’s summary-judgment motion asserted that West Wind was not entitled to a summary judgment because, he said, a genuine issue of material fact existed regarding whether West Wind had given him proper notice of the foreclosures and a genuine issue of material fact existed regarding whether he owed West Wind any dues when it foreclosed on the four condominium units.
On April 7, 2011, West Wind moved to strike Ross’s affidavit and the unauthenticated documents he had filed in opposition to West Wind’s summary-judgment motion. As grounds for striking Ross’s affidavit, West Wind asserted that Ross’s affidavit contained inadmissible testimony and that Ross’s affidavit did not satisfy the personal-knowledge requirement of Rule 56(e), Ala. R. Civ. P., because, West Wind said, Ross had qualified his affirmation of the truth of the facts recited in his response to West Wind’s summary-judgment motion with the phrase “to my knowledge and belief’ instead of affirming that they were true without qualification. Ross did not respond to West Wind’s motion to strike.
Also on April 7, 2011, West Wind filed an affidavit signed by Vargo with a number of documents attached. In pertinent part, Vargo’s affidavit stated:
“I represented Defendant West Wind Condominium Association, Inc. (herein referred to as West Wind’) in the matters of attempted collection of past due assessments from Howard Ross, who is the Plaintiff in the above-styled action pending before this Court. My client at the time, West Wind, provided information to me concerning the amounts of the unpaid assessment payments, interest and late charges owed to West Wind by Howard Ross pertaining to five condo units that Howard Ross owned at [that] time, which was the time period of November and December, 2007. There are four of those units that are the subject of this pending lawsuit, those being: Unit Number J of Building 3816 of the West Wind Condominiums; Unit Number A of Building 3816, Unit Number C of Building 3818 and Unit Number B of Building 3818.
“The President of West Wind at that time, Joseph London, III, verified those amounts owed by Howard Ross on five documents that I prepared with his assistance, of which there are four documents which pertain to the four units that are the subject matter of this lawsuit. I have attached hereto certified copies of the four documents, each titled ‘Claim Of Lien For Unpaid Assessments,’ which are attached and marked collectively as Defendant’s Exhibit W-6(CC)(since they are certified copies of the Defendant’s Exhibit W-6 already filed by West Wind in support of its motion for summary judgment). I took the steps necessary for those four Claims Of Lien to be recorded in the *36 records of the Office of the Judge of Probate of Madison County, Alabama, on December 3, 2007.
“Having reviewed correspondence between the offices of Mr. A. Mac Martin-son, an attorney who had previously represented West Wind in the same matter of collection of assessments from Howard Ross, and Mr. Patrick A. Jones, I understood that Howard Ross was being represented at the time by Mr. Patrick A. Jones. Part of that correspondence is attached as exhibits to the response of Howard Ross to the motion for summary judgment, namely Plaintiffs Exhibits 6 and 17. In representing my client, and in order not to violate attorney ethics regarding not communicating about the subject matter of the representation with a party under circumstances implying that such party is represented in the matter by an attorney (i.e. Rule 4.2, Alabama Rules Of Professional Conduct), I prepared my letter for Howard Ross to be addressed to attorney Patrick A. Jones. I mailed the letter to Mr. Patrick A. Jones via United States Mail, proper postage prepaid, dated December 11, 2007, concerning Howard Ross. A true and correct copy of that letter, and its enclosures, is attached as Defendant’s Exhibit W-8 to the Motion For Summary Judgment filed by West Wind in this cause. The letter’s enclosures are the five liens-claims documents that I had caused to be recorded in the records of the Office of the Judge of Probate of Madison County, Alabama, of which four (Defendant’s Exhibit W-6 and W-6(CC)) pertain to this matter, as stated above. The letter contains a statement that, ‘In the event the subject amounts are not paid in full by December 22 2007, we will commence foreclosure proceedings.’
“I did not ever receive any response from either Howard Ross or Patrick A. Jones to that letter dated December 11, 2007, nor was that letter returned to me in the mail as undelivered. On behalf of West Wind, I proceeded with the process of foreclosing on the liens that West Wind had on the four condo units that belonged to Howard Ross. I caused notices of foreclosure sales on each of the four units to be run in a newspaper of local distribution in Madison County, Alabama, which is the Madison County Record. True and correct copies of those verified notices of publication prepared by the Publisher of that newspaper are attached as collective Defendant’s Exhibit W-2 to West Wind’s Motion For Summary Judgment, and the original documents were admitted into evidence at a hearing before this Court. The notices of each of the four foreclosure sales were published for four consecutive weeks, as the notices state.
“I held the foreclosure sales as auctioneer for each of the four subject condo units on February 15, 2008. I duly prepared, executed, and caused to be recorded in the records of the Office of the Judge of Probate of Madison County, Alabama, a Foreclosure Deed for each of the foreclosure sales of each of the four subject condo units. True and correct copies of those four Foreclosure Deeds are attached as collective Defendant’s Exhibit W-3 to West Wind’s Motion for Summary Judgment, and copies were admitted into evidence at a hearing before this Court.”
On April 14, 2011, the trial court entered an order (1) striking Ross’s affidavit and all the unauthenticated documents Ross, had filed with his response to West Wind’s summary-judgment motion and (2) granting West Wind’s summary-judgment motion.
*37 On July 22, 2011, Ross filed a motion asking the trial court to reconsider its rulings striking his affidavit and granting West Wind’s summary-judgment motion. Ross argued that the trial court should reconsider its ruling striking his affidavit because, he said,
“the statements in the Plaintiff’s narrative summary that are supported by the Plaintiffs affidavit are the knowledge of the Plaintiff, or are statements made by a representative of West Wind, the party opponent in this matter, and are not offered to prove the matter asserted. The offering of statements made by West Wind agents were offered to show-the Plaintiffs belief that he was making repairs and performing work with the expectation of reimbursement in the form of credit toward his condominium dues. The establishment of Plaintiffs said belief supports his claim for dues credit that he had personally sent to West Wind’s counsel.”
Ross argued that the trial court should reconsider its ruling granting West Wind’s summary-judgment motion because, he said, a genuine issue of material fact existed regarding whether West Wind had given him proper notice of the foreclosures and a genuine issue of material fact existed regarding whether he owed West Wind any dues when it foreclosed on the four condominium units.
On July 25, 2011, the trial court entered an order denying Ross’s motion asking the trial court to reconsider its rulings striking his affidavit and granting West Wind’s motion for a summary judgment.
Ross’s claims against Sullivan were disposed of by the entry of a default judgment in favor of Ross.
Ross timely appealed to this court from the summary judgments in favor of West Wind and London. Due to lack of jurisdiction, this court transferred the appeal to the supreme court. The supreme court then transferred the appeal back to this court pursuant to § 12-2-7(6), Ala.Code 1975.
Initially, we note that Ross did not name the Spruills as appellees in his notice of appeal, did not otherwise indicate in his notice of appeal that he was appealing the summary judgment in favor of the Spruills, and did not direct the circuit-court clerk to serve the Spruills with a copy of his notice of appeal. Therefore, the Spruills are not parties to this appeal, and the issue whether the summary judgment in their favor was proper is not before us. See Veteto v. Swanson Servs. Corp., 886 So.2d 756, 768-65 (Ala.2003).
Ross argues that the trial court erred in striking his affidavit in opposition to West Wind’s summary-judgment motion because, he says, the facts recited in the “Narrative of Facts” in his response to that motion, which he says he affirmed in his affidavit in opposition to that motion, were either facts of which he had personal knowledge or were statements made by representatives of West Wind that were merely offered to show Ross’s belief regarding his right to a credit against his dues.
The material facts Ross sought to prove by his affidavit’s adoption of the “Narrative of Facts” in his response to West Wind’s summary-judgment motion were (1) that, on April 2, 2005, West Wind, through its then president, Charles Rag-land, agreed to accept Ross’s performance of maintenance and repairs on West Wind’s premises in lieu of Ross’s having to pay condominium dues; (2) that in September 2006 West Wind’s then president, Ray Hanson, told Ross that West Wind no longer needed him to perform maintenance and repairs on West Wind’s premises and that he should begin paying his condomini *38 um dues; (3) that Ross began paying his condominium dues in December 2006 and paid his condominium dues for December 2006, January 2007, February 2007, and March 2007; (4) that West Wind accepted all those payments of condominium dues; (5) that Ross paid his condominium dues for April and May of 2007 but West Wind returned those payments to him and requested documentation of the amounts he was claiming as a credit against his condominium dues; (6) that Ross provided the requested documentation to West Wind; (7) that he never heard anything further from West Wind; (8) that West Wind foreclosed on the four condominium units; and (9) that Ross did not learn of the foreclosures until a third party told him that they had already occurred. The two identical affidavits Ross had filed in opposition to the partial-summary-judgment motions filed by London and the Spruills attested to all those material facts. In Fountain v. Phillips, 404 So.2d 614, 618 (Ala.1981), the supreme court stated:
“It is the law in Alabama, as well as in federal courts, that a trial court may properly consider any material that would be admissible at trial and all evidence of record as well as material submitted in support of or in opposition to the motion when ruling on a motion for summary judgment. Moms v. Morris, 366 So.2d 676 (Ala.1978). See also, 10 C. Wright & A. Miller, Federal Practice and Procedure § 2721 (1973). We therefpre hold that all evidence of record, as well as that evidence formally submitted in support of or in opposition to a motion for summary judgment, should be considered in ruling on [a] motion ¡for a summary judgment].”
(Final emphasis added.)
Thus, the two identical affidavits Ross had filed in opposition to the partial-summary-judgment motions filed by London and the Spruills, which were in the record when the trial court took West Wind’s summary-judgment motion under submission, constituted evidence to be considered by the trial court in ruling on West Wind’s summary-judgment motion, see Fountain v. Phillips, and to be considered by this court in reviewing the summary judgment entered by the trial court, see Mathis v. Jim Skinner Ford, Inc., 361 So.2d 113, 116 (Ala.1978) (“The propriety of granting motions for summary judgment must be tested by reviewing what the trial court had before it when it granted the motion.”). Consequently, because the two affidavits Ross had filed in opposition to the partial-summary-judgment motions filed by London and the Spruills attested to all the material facts Ross sought to prove by his affidavit in opposition to West Wind’s summary-judgment motion, any error the trial court may have committed by striking Ross’s affidavit in opposition to West Wind’s summary-judgment motion was harmless error and does not warrant a reversal of the summary judgment in favor of West Wind. See Rule 45, Ala. R.App. P. (“No judgment may be reversed ... in any civil ... case on the ground of ... the improper ... rejection of evidence ... unless in the opinion of the court to which the appeal is taken ..., after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties.”).
Ross also argues that the trial court erred in granting West Wind’s summary-judgment motion because, he says, § 35-8A-316(a), Ala.Code 1975, required West Wind to give him actual advance notice of the foreclosure of the four condominium units and West Wind failed to make a prima facie showing that it had given him such notice.
*39 “We review a summary judgment de novo. American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786 (Ala. 2002).
“ “We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating a genuine issue of material fact. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw.’
“Nationwide Prop. & Cas. Ins. Co.[ v. DPF Architects, P.C.l 792 So.2d [369] at 372 [ (Ala.2000) ] (citations omitted), quoted in American Liberty Ins. Co., 825 So.2d at 790.”
Potter v. First Real Estate Co., 844 So.2d 540, 545 (Ala.2002).
Section 35-8A-316(a) provides:
“(a) The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association’s lien may be foreclosed in like manner as a mortgage on real estate but the association shall give reasonable advance notice of its proposed action to the unit owner and all lienholders of record of the unit. Unless the declaration otherwise provides, fees, charges, late charges, fines, and interest charged pursuant to section 35-8A-302(a)(10), (11) and (12) are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.”
(Emphasis added.)
West Wind supported its summary-judgment motion with, among other things, Vargo’s affidavit. In his affidavit, Vargo authenticated a letter he had mailed to Jones on December 11, 2007. That letter stated:
“I represent West Wind Condominium Association, Inc. in an effort to collect past due assessments from Howard Ross. It is my understanding that you represent Mr. Ross in connection with this subject matter.
“Enclosed please find the lien claims filed by my client in connection with the failure of your client to pay assessments. In the event the subject amounts are not paid in full by December 22, 2007, we will commence foreclosure proceedings.”
(Emphasis added.) Vargo’s affidavit and his December 11, 2007, letter to Jones made a prima facie showing that West Wind had given Ross reasonable advance notice that it proposed to foreclose on the four condominium units if he did not pay the amounts it was claiming in its liens by December 22, 2007, and thus made a prima facie showing that West Wind had given Ross the “reasonable advance notice of its proposed action” required by § 35-8A-316(a). By making that prima facie showing, West Wind shifted the burden to Ross to produce substantial evidence establishing a genuine issue of material fact regarding whether West Wind had given Ross the reasonable advance notice of its proposed action required by § 35-8A-316(a). See Lucas v. Alfa Mut. Ins. Co., 622 So.2d 907, 908-09 (Ala.1993).
*40 Ross does not argue in his principal brief to this court that the trial court erred in granting West Wind’s summary-judgment motion because Ross met his burden of producing substantial evidence establishing the existence of a genuine issue of material fact regarding whether West Wind had given him reasonable advance notice of its proposed action as required by § 35-8A-816(a). Although his reply brief contains language that could possibly be construed as making that argument, this court does not consider issues raised for the first time in a reply brief. See Byrd v. Lamar, 846 So.2d 334, 341 (Ala.2002) (“[An appellate court] does not address issues raised for the first time in a reply brief.”). Thus, by failing to make that argument in his principal brief, Ross waived the issue whether the trial court erred because Ross met his burden of producing substantial evidence establishing the existence of a genuine issue of material fact regarding whether West Wind had given him reasonable advance notice of its proposed action as required by § 35-8A-316(a). See Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”); Byrd v. Lamar; and McGlathery v. Alabama Agric. & Mech. Univ., 105 So.3d 437, 442 (Ala.Civ.App.2012) (“[A]ppellate courts do not consider arguments raised for the first time on rehearing.”).
Ross also argues that the trial court erred in granting West Wind’s summary-judgment motion because, he says, West Wind failed to make a prima facie showing that he owed West Wind a debt. However, West Wind supported its summary-judgment motion with the hen claims West Wind had recorded in the probate court with respect to each of the four condominium units. Each lien claim stated the amount West Wind claimed that Ross owed with respect to the condominium unit that was the subject of the lien claim, and each lien claim was verified by London, who signed the following verification:
“I, Joseph London, III, declare that:
“I am the President of West Wind Condominium Association, Inc., an Alabama corporation, named as the Association in the foregoing claim of lien; I am authorized to make this verification for the Association.
“I have read it and know its contents; it is true to my own knowledge and contains, among other things, a correct statement of my demand after deducting all just credits and offsets.”
Ross argues that the lien claims were not admissible evidence. However, he did not move to strike them. Because he did not move to strike the lien claims, he waived any objection on appeal regarding the trial court’s consideration of the lien claims. See Ex parte Secretary of Veterans Affairs, 92 So.3d 771, 777 (Ala.2012) (“Because Frank failed to move the trial court to strike the Hiatt affidavit and the unsworn, uncertified, and unauthenticated documents that accompanied that affidavit, he waived any objection on appeal regarding the trial court’s consideration of the affidavit and supporting documents.”). Thus, West Wind made a prima facie showing that Ross owed it a debt and shifted the burden to Ross to produce substantial evidence establishing the existence of a genuine issue of material fact regarding whether he owed West Wind a debt. See Potter v. First Real Estate Co., supra.
Ross does not argue in his principal brief to this court that the trial court erred in granting West Wind’s summary-judgment motion because he met his burden of producing substantial evidence establishing the existence of a genuine issue of *41 material fact regarding whether he owed West Wind a debt. Therefore, he has waived that issue. See Boshell v. Keith; Byrd v. Lamar; and McGlathery v. Alabama Agric. & Mech. Univ. Accordingly, we affirm the summary judgment in favor of West Wind.
Ross also argues that the trial court erred in granting London’s partial-summary-judgment motion with respect to Ross’s claim seeking an order setting aside the foreclosure sales because, he says, London’s partial-summary-judgment motion did not challenge that claim. Ross’s contention that London’s partial-summary-judgment motion did not challenge Ross’s claim seeking an order setting aside the foreclosure sales is correct. Because London’s partial-summary-judgment motion did not challenge Ross’s claim seeking an order setting aside the foreclosure sales, it did not meet London’s initial burden of making a prima facie showing that he was entitled to a summary judgment with respect to that claim. See Employees of the Montgomery Cnty. Sheriff's Dep’t v. Marshall, 893 So.2d 326, 330 (Ala.2004) (“Since the sheriffs motion did not challenge the plaintiffs’ claims against the sheriff in his individual capacity, the motion did not meet the initial burden of the sheriff in his individual capacity, that is, ‘ “the burden of production, i.e., the burden of making a prima facie showing that he is entitled to summary judgment.” ’ Ex parte General Motors Corp., 769 So.2d 903, 909 (Ala.1999) (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)).”). However, in order to prevail on his claim seeking an order setting aside the foreclosure sales, Ross would have to prevail on that claim against West Wind, the party who actually foreclosed on the condominium units, and Ross has failed to present arguments on appeal justifying a reversal of the summary judgment in favor of West Wind with respect to that claim. Consequently, we conclude that the trial court’s error in granting London’s partial-summary-judgment motion with respect to Ross’s claim seeking an order setting aside the foreclosure sales did not injuriously affect Ross’s substantial rights and, therefore, constituted harmless error that does not warrant reversal of the summary judgment in favor of London. See Rule 45, Ala. R.App. P. Therefore, we affirm the summary judgment in favor of London.
Finally, Ross argues that the trial court erred in granting London’s motion to strike the second amended complaint. However, Ross represented to the trial court that he had asserted two of the three claims added by the second amended complaint, i.e., the claim of intentional interference with business or contractual relations and the claim of unlawful detention of property, against the Spruills only. As noted above, Ross has not appealed the summary judgment in favor of the Spruills. Therefore, the summary judgment in favor of the Spruills has become a final judgment that bars Ross from prosecuting the claims against them that he sought to add in the second amended complaint. See Stevenson v. Precision Standard, Inc., 762 So.2d 820, 827 (Ala.1999) (“[Because Stevenson[, the plaintiff,] did not appeal from the judgment in favor of Windsor[, one of the defendants], that judgment has become final; therefore, the doctrine of res judica-ta bars a new trial on the issue of Windsor’s liability.”). Consequently, any error committed by the trial court in granting the motion to strike those two claims against the Spruills did not affect Ross’s substantial rights and, consequently, constitutes harmless error. See Rule 45.
The remaining claim Ross sought to add in the second amended complaint was a breach-of-contraet claim against *42 West Wind. That claim was based on the allegation that West Wind’s agreement to give Ross a credit against the dues on the four condominium units for performing or paying for maintenance and repair work at the condominium and for allowing a maintenance man employed by West Wind to live temporarily in one of the four condominium units without paying rent constituted a contract and that West Wind had breached that contract by failing to give Ross such a credit. Thus, that claim was based on alleged facts that were known to Ross when he filed his original complaint. Indeed, Ross’s claim seeking an order setting aside the foreclosure sales, which he included in his original complaint filed on April 18, 2008, was based, in part, on those same alleged facts. Yet, Ross delayed filing his second amended complaint for almost a year after he filed his original complaint. Moreover, the first trial setting was scheduled for March 2009, and Ross filed his second amended complaint less than 42 days before that first trial setting.
In Rector v. Better Houses, Inc., 820 So.2d 75, 77-78 (Ala.2001), the supreme court stated:
“Rule 15(a), Ala. R. Civ. P., governs amendments to pleadings. It provides, in pertinent part:
“ ‘Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.’
“(Emphasis added.) In Boros v. Baxley, 621 So.2d 240 (Ala.1993), we explained:
“ ‘Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that “the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion.” ’
“621 So.2d at 245 (citations omitted). Thus, ‘Rule 15, [Ala. R. Civ. P.], is not carte blanche authority to amend a complaint at any time.’ Stallings v. Angelica Uniform Co., 388 So.2d 942, 947 (Ala.1980) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975)). ‘[Ujndue delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment.’ Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 984 (Ala.1989). ‘[I]f the court determines ... that a party has had sufficient opportunity to state a claim ... but has failed to do so, leave to amend may properly be denied.’ Walker v. Traughber, 351 So.2d 917, 922 (Ala.Civ.App.1977).”
In the present case, because Ross had knowledge of all the alleged facts upon which he based his breach-of-contract claim when he filed his original complaint yet delayed filing his second amended complaint for almost a year after he filed his original complaint and because he filed his second amended complaint less than 42 days before the first trial setting, we conclude that the trial court did not exceed its discretion in striking the second amended complaint as to Ross’s breach-of-contract claim. See Rector v. Better Houses.
Accordingly, we affirm the judgments of the trial court.
*43 APPLICATION FOR REHEARING GRANTED; OPINION OF MAY 4, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Section 6-5-255 provides:
"If the purchaser or his or her vendee or transferee fails or refuses to reconvey to such party entitled and desiring to redeem such title as the party acquired by the sale and purchase, such party so paying or tendering payment shall thereupon have the right to file in the circuit court having jurisdiction thereof a complaint to enforce his or her rights of redemption.”

. Section 6-5-256 provides:
"Upon the filing of any complaint as provided in these sections and paying into court the amount of purchase money and the interest necessary for redemption and all lawful charges, if the written statement thereof has been furnished or, if not furnished, offering to pay such debt or purchase price and all lawful charges, the circuit court shall take jurisdiction thereof and settle and adjust all the rights and equities of the parties, as provided in this article.”