This appeal is from a summary judgment; we affirm.
On January 30, 2002, Jim Bishop Chevrolet, Inc., doing business as Jim Bishop Toyota ("Bishop"), sued Andy Braden in *Page 1042 
the Colbert Circuit Court, alleging fraud, breach of contract, detinue, conversion, and misrepresentation. Braden responded with a motion to dismiss, which was denied by the trial court; Braden then filed an answer, which he subsequently amended. Bishop gave notice of its intent to depose Braden and Braden responded on July 31, 2002, with a motion to stay the civil proceedings, listing the following grounds:
 "2. Among the claims in the complaint, [Bishop] has accused [Braden] of various conduct, which constitute criminal acts.
 "3. Counsel for [Bishop] has, on more than one occasion, advised [Braden's] counsel that [Bishop] would request a criminal investigation of [Braden], based on those allegations in [Bishop's] civil complaint. Such threats and allegations by [Bishop] create a real and imminent threat of criminal investigation of [Braden].
 "4. As part of the civil case, [Bishop] has attempted to conduct discovery upon [Braden], and specifically, to set [Braden's] deposition.
 "5. If [Braden] is required to participate in discovery, as to this matter, [Braden] will have been compelled to give self[-]incriminating testimony and responses.
 "6. . . . [Braden's] Constitutional and procedural rights, can only be protected with a stay of this civil matter.
 "7. Any prejudice such stay may cause to [Bishop] is far outweighed by the need to protect the fundamental rights of [Braden]."
The trial court conducted a hearing on Braden's motion to stay. Awaiting a ruling, Bishop amended the complaint to assert a claim of breach of a promissory note. On October 16, 2002, the trial court denied Braden's motion to stay. Braden filed a "motion to reconsider" that order and attached his affidavit, in which he attested:
 "On at least one occasion, my attorney, Garve Ivey, was advised by [Bishop's] counsel that I, was in danger of criminal prosecution, based upon the hearsay in [Bishop's] complaint. Further, I have been advised by someone closely connected to [Bishop], that [Bishop] wanted me to be criminally prosecuted, and that I was going to be arrested. These incidents, combined with the fact that some of the allegations of [Bishop's] complaint against me rise to criminal acts, cause me to be in real and immediate fear that I will be criminally charged, as a result of [Bishop's] complaint.
 "Understanding that I have a privilege against self[-]incrimination, under the Fifth Amendment of the United States Constitution, I should not be forced to testify in this proceeding, including in the discovery process, as such may violate my Constitutional protections."
Bishop filed a motion to strike Braden's affidavit, arguing that nothing in the affidavit amounted to "personal knowledge" and that the affidavit was "solely buttressed in hearsay." After conducting a hearing on both motions, the trial court granted Bishop's motion to strike and denied Braden's motion to reconsider. The trial court referred the matter to mediation. On December 17, 2002, Braden filed a petition for a writ of mandamus with the Court of Civil Appeals, seeking an order directing the trial court to stay the underlying action. The Court of Civil Appeals transferred the matter to this Court on jurisdictional grounds. On January 27, 2003, this Court denied the petition, without an opinion. Ex parte Braden (No. 1020454), ___ So.2d ___ (Ala. 2003) (table).
Bishop again gave notice of its intent to take Braden's deposition in the civil proceeding. On March 10, 2003, Braden filed *Page 1043 
an amended answer to the complaint, alleging accord and satisfaction as an affirmative defense. Braden was deposed on April 8, 2003, and invoked the protections of the Fifth Amendment in his response to each question other than the one asking his name and address. On April 24, 2003, the mediator reported that the dispute had not been settled during a mediation session held that day. On April 25, 2003, Braden attached copies of his deposition questions and "answers" to another motion to stay the proceedings, in which he argued:
 "2. In the prosecution of this matter, [Bishop] has set, and conducted, the deposition of [Braden]. During the course of such deposition, counsel for [Bishop] asked questions of [Braden], that, if answered in the fashion contemplated by [Bishop's] counsel, would incriminate [Braden].
 "3. Among the questions asked during the deposition of [Braden], [Bishop's] counsel asked [Braden] if he had possession, or had sold or disposed of certain cars, which [Bishop] contends actually belong to [Braden].
 "4. Another question asked of [Braden] by [Bishop's] counsel was whether [Braden] had ever participated in `assignment skipping,' which is, as Defense Counsel understands, a means by which a vehicle's title is improperly, and fraudulently transferred.
 "5. Other questions asked of [Braden] by [Bishop's] counsel, concerned possible transactions between [Braden] and out-of-state entities, thereby raising the issues of incrimination for acts in not only other states, but on a Federal level.
 "6. [Bishop's] counsel also asked [Braden] questions related to the fraudulent transfer and use of automobile titles.
". . . .
 "8. Though no criminal charges are pending against [Braden], and even if such are remote, he has a reasonable apprehension of criminal prosecution, in that the same material facts in the civil action, would be material and potentially incriminating in any criminal investigation or prosecution. Such apprehension is sufficient for the staying of this civil proceeding."
(Citations omitted.) On April 30, 2003, Bishop filed a motion for a summary judgment; the trial court set the motion for hearing on May 27, 2003. Braden filed a motion to continue the hearing, the grounds of which mirrored his earlier motions to stay, the only pertinent additions being the following:
 "8. On April 30, 2003, [Bishop] filed a Motion for Summary Judgment, with Evidentiary Submissions. [Bishop] set out facts, which are represented as `undisputed.'
 "9. Just as [Braden] could not answer questions asked of him at deposition, without waiving his privilege against self-incrimination, [Braden] is unable to present any testimony to dispute [Bishop's] alleged facts, for fear of waiving his privilege. As such, [Braden] is unable to adequately defend himself at trial, or to resist [Bishop's] Motion for Summary Judgment, at this time.
 "10. At the time of this filing, the Court has not ruled on [Braden's] Motion to Stay.
 "11. The rights of [Braden] can only be preserved, at this point, by continuing the present settings in this matter.
 "12. Any prejudice such continuance might cause [Bishop] is far outweighed by the need to protect the fundamental rights of [Braden]."
(Exhibit references omitted.)
Bishop objected to Braden's motion to continue on the following bases: *Page 1044 
 "1. The case has been pending for more than one and one-half (1 1/2) years.
 "2. This action alleges matters which have caused more than $700,000.00 [sic] to [Bishop] who continues to incur said damage absent a judgment against [Braden] in this case.
". . . .
 "4. The issues raised by [Braden] in this latest motion to stay are the same issues which have been previously raised which the Alabama Supreme Court summarily ruled on by denial of [Braden's] Petition for Mandamus."
On May 29, 2003, the trial court issued the following order:
 "This case was set for hearing on [Bishop's] Motion for Summary Judgment on May 27, 2003. The Court notes that [Bishop] filed the Motion for Summary Judgment on April 30, 2003. The Court further notes that [Braden] did not file a response to [Bishop's] Motion for Summary Judgment although on May 22, 2003, at approximately 3:30 p.m., the Defendant filed a Motion to Continue the hearing.
". . . .
 "A. Summary judgment is hereby entered against [Braden] in favor of [Bishop] on the conversion count alleged in Count One of [Bishop's] complaint in the sum of Six Hundred Seventy-Nine Thousand Seven Hundred Sixty-Five and 49/100 Dollars ($679.765.49) plus statutory interest at six percent (6%) from July 18, 2001 through the date of this Order. Pursuant to Rule 54(b)[, Ala. R. Civ. P.], the Court expressly directs entry of final judgment as to Count One and further finds that there is no just reason for delay of a final judgment.
 "B. The motion for Summary Judgment as to fraud alleged in Count Five of [Bishop's] Complaint is denied."
Braden filed a motion to vacate Bishop's summary judgment on the ground that the trial court should have granted his motion for a continuance of the hearing on the summary-judgment motion. The trial court denied the motion to vacate on June 27, 2003. Braden appeals, arguing that the trial court erred in granting Bishop's summary-judgment motion as to the conversion claim because, he argues, he had sought a stay of the civil proceedings to avoid incriminating himself and he could not otherwise defend against the summary-judgment motion.
Our de novo review of a summary judgment is well established.
 "In reviewing the disposition of a motion for summary judgment, `we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,' Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala. 1988), and whether the movant was `entitled to a judgment as a matter of law.' Wright v. Wright, 654 So.2d 542
(Ala. 1995); Rule 56(c), Ala.R.Civ.P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Evidence is `substantial' if it is of `such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543
(quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. *Page 1045 Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala. 1993); Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala. 1990)."
Hobson v. American Cast Iron Pipe Co., 690 So.2d 341, 344 (Ala. 1997).
Viewed in the light most favorable to Braden, the nonmovant, the record reveals the following facts: Bishop, a car dealership located in Colbert County, had a business arrangement with Braden. Pursuant to that arrangement, Bishop would supply capital to Braden, who would then purchase vehicles at auctions and from other dealerships and individuals, and then sell the vehicles directly to customers. Any net profit realized was divided between Braden and Bishop. Sometime in 2001, Bishop, based on an examination of the financial records of the dealership, came to believe that Braden had not been turning over all of the proceeds of his independent sales. Bishop asserts that Braden wrongfully retained approximately 30 vehicles and approximately $778,000. Bishop brought the matter to Braden's attention, and Braden executed the following promissory note, which was handwritten:
 "I, [Braden] owe to [Bishop] the sum of $859,000.00. This amount owed is for Inventory of vehicles purchased by [Braden] (see attached list). This repayment will take place on 7/19/01. $710,000.00 remainder of $149,000.00 paid in 10 days."
Upon further review of the dealership's records, Bishop realized that some of the vehicles he thought Braden had wrongfully retained had been sold and the proceeds given to Bishop. This resulted in Bishop's crediting Braden for those vehicles, and lessening the total amount owed Bishop under the promissory note to $679,765.49. Braden did not make any payments pursuant to the note, however, and Bishop instituted this action in January 2002.
Braden begins his argument to this Court with references to the pertinent provisions of the Fifth Amendment to the United States Constitution and art. I, § 6, of the Alabama Constitution of 1901. The Fifth Amendment states, in pertinent part that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." Article I, § 6, states, in pertinent part "[t]hat in all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself. . . ." Taken together, the two provisions guarantee the privilege against self-incrimination. In Hill v. State,366 So.2d 318 (Ala. 1979), this Court held that the right against self-incrimination afforded a criminal accused by art. I, § 6, is coextensive with that afforded an accused under theFifth Amendment.
In Ex parte Ebbers, 871 So.2d 776 (Ala. 2003), Ebbers, a former president and chief executive officer of WorldCom, was sued, along with other defendants. The complaint alleged that the defendants had "engaged in various accounting machinations and irregularities and issued various materially misleading financial reports and statements," giving rise to a civil action.871 So.2d at 782. During the time of the civil action, Ebbers was undeniably the subject of a criminal investigation, though he had not been formally indicted. Ebbers filed a motion to stay the civil proceedings, arguing that because of the ongoing criminal investigation, there was "a sufficient risk of self-incrimination so as to implicate his Fifth Amendment right," and that "if no stay of discovery was granted to him in the [civil] litigation, he would be forced to choose between either waiving that right and risking self-incrimination, or asserting it, in which event his refusal to respond could be the subject of adverse comment at trial in the [civil] litigation." 871 So.2d at 784. The trial court denied *Page 1046 
Ebbers's motion for a stay, but this Court reversed that decision based on its review of the developed body of caselaw, from which it derived the following pertinent principles:
 "1. A party is entitled to assert the Fifth Amendment privilege against self-incrimination although no criminal charges have been instituted, and even where the risk of prosecution is remote, so long as the party reasonably apprehends a risk of self-incrimination. A party need not be indicted to properly claim the Fifth Amendment privilege. [Ex parte] Baugh, [530 So.2d 238 (Ala. 1988)], [Ex parte] Great Escapes Travel, [Inc., 573 So.2d 278 (Ala. 1990)], [Ex parte] Coastal Training Institute, [583 So.2d 979 (Ala. 1991)], [Ex parte Price, 707 So.2d 1105 (Ala. 1997) (`Price II')], and [Ex parte] Williams, [775 So.2d 146 (Ala. 2000)].
 "2. When the Fifth Amendment privilege is asserted, it is for the trial court, not the party asserting the privilege, to determine whether the party's apprehension of a risk of self-incrimination is reasonable and well-founded. Coastal Training.
 "3. The Fifth Amendment privilege applies in state-court civil proceedings, including depositions. Baugh, Coastal Training, [Ex parte] Pegram, [646 So.2d 644 (Ala. 1994)], and Price II. A party cannot be compelled to testify or compelled to provide discovery in a civil proceeding while there is a parallel criminal action pending against the party. Baugh and [Ex parte] White, [551 So.2d 923 (Ala. 1989)].
 "4. The United States Constitution does not automatically require a stay of civil proceedings pending the outcome of parallel criminal proceedings or potential parallel criminal proceedings. Baugh, Coastal Training, Pegram, and [Ex parte] Hill, [674 So.2d 530 (Ala. 1996)].
 "5. Whether to grant a stay to a party in a civil case who is the target of actual or threatened parallel criminal proceedings must be determined by weighing and balancing the interest of the party moving for the stay in postponing the civil action against the prejudice to the other party that might result from delay. Baugh, White, Coastal Training, Hill, [Ex parte] Price, [698 So.2d 111 (Ala. 1997) (`Price I')], Price II, Williams, and [Ex parte] Oliver, [864 So.2d 1064 (Ala. 2003)].
". . . .
 "12. `[A] motion to stay civil discovery during the pendency of a parallel criminal proceeding is not properly granted upon speculative or conclusory grounds.' Hill, 674 So.2d at 533."
In their third amended complaint, the plaintiffs in Ebbers
expressly acknowledged: "`It is likely that defendant Ebbers will be indicted and either plead guilty to or be convicted of criminal wrongdoing for the law-violating conduct which is the subject of this case.'" 871 So.2d at 790. Ebbers filed an affidavit of an attorney specializing in representing clients in complex criminal matters whom he had retained to represent him; the attorney attested that "`Mr. Ebbers is the subject of an ongoing criminal investigation,'" and that the pending civil action related to matters "`presently under review by the Department of Justice as part of its investigation of Mr. Ebbers.'" 871 So.2d at 790-91. The attorney opined that "`there is a reasonable apprehension of a risk of self-incrimination'" if Ebbers is forced "`to provide testimony to respond to discovery in [the] civil action.'" 871 So.2d at 791. Ebbers also submitted to the trial court newspaper articles that stated the possibility that prosecutors in Mississippi *Page 1047 
also would seek criminal charges against him. Because of these factors, this Court concluded that "[i]t is clear that Ebbers was the target of an ongoing, overlapping criminal investigation by the United States Department of Justice," and that "there was the possibility that Mississippi prosecutors would also seek criminal charges against Ebbers." 871 So.2d at 796.
By way of contrast, Braden can point to no criminal investigation relating to him underway or in any way imminent. He has not been indicted on the basis of any criminal charges, and he knows of no grand jury inquiry underway or planned relating to him. He asserts only that he "reasonably apprehends a risk of self-incrimination" because of the nature of those questions asked during his deposition. Braden claims that those questions, if answered, could expose him to criminal liability. However, the questions were equally relevant to civil liability, and he indiscriminately refused to answer all questions after providing his name and address, including such patently innocuous questions as "How are you employed?" "What is the address of your employment?" and "Do you understand you are a party to a lawsuit?" While Ebbers confirms that there does not have to be an existing criminal investigation to stay a civil proceeding onFifth Amendment grounds, there must be some evidence presented from which the trial court can determine that the person claiming the privilege has a reasonable apprehension of criminal prosecution. Importantly, as Ebbers reminds, it is for the trial court, not the party moving for the stay, to assess whether the movant's apprehension of a risk of self-incrimination is reasonable under all of the attendant circumstances. As noted, Braden's affidavit offered as the sole support for his motion to reconsider was stricken, and Braden does not now allege error in that regard. The trial court denied Braden's motion to reconsider and his motion to continue. By denying those motions, the trial court implicitly determined that Braden's fears were not reasonable or well-founded, based on the record before the court, a determination within its sound discretion.
Braden asserted in his unverified motion to stay, filed in July 2002, that "on at least one occasion," at some unspecified time before the filing of the motion, Bishop's attorney had advised Braden's attorney that Bishop would request a criminal investigation of Braden. As time passed without such an investigation materializing, and Bishop seemingly having elected to concentrate on its civil remedies, the likelihood of Braden's being exposed to criminal prosecution grew increasingly remote. Bishop's alleged "threat" of requesting a criminal investigation was necessarily diffused by the passage of nine months without any "follow-through." Braden does not seek a review of the trial court's denials of his motions for a stay; in fact, he states affirmatively in his reply brief that he excludes those rulings from present consideration because he "will later ask" this Court to consider them "by way of a properly filed Petition for Writ of Mandamus."
We will not hold a trial court in error for denying a nonmovant's motion to continue a duly scheduled hearing on a summary-judgment motion where there is no basis for a continuance properly established in accordance with the procedure available under Rule 56(f), Ala. R. Civ. P. As the record was constituted at the time of the hearing on the summary-judgment motion, Braden's only bases for continuing the hearing were (1) his unverified statement in his July 2002 motion to stay that on more than one occasion Bishop's counsel had advised of his client's plan to "request" a criminal investigation of Braden and (2) Braden's citation to certain deposition *Page 1048 
questions, none of which he had been required to answer. As to the first ground, the status of the criminal investigation remained unchanged when this Court denied Braden's petition for the writ of mandamus in January 2003.
The trial judge did not exceed his discretion in determining, based on the record before him, that Braden's professed apprehension of criminal prosecution was not, or, at least, was no longer, reasonable and was not a reason to continue the hearing on Bishop's summary-judgment motion.
Because Braden presented no evidence to rebut the factual assertions made as to Bishop's conversion claim in its motion for a summary judgment, the trial court properly viewed the facts relating to that issue to be undisputed, the result being that no genuine issue of material fact existed and under those undisputed facts, Bishop was entitled to a judgment as a matter of law on its conversion claim. Therefore, the trial court properly granted Bishop's motion for a summary judgment; that judgment is hereby affirmed.
AFFIRMED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur.