PARKER, Justice.
Garfield W. Ivey, Jr., appeals a judgment entered by the Walker Circuit Court (“the circuit court”) in favor of James C. King. We affirm the circuit court’s judgment.

Facts and Procedural History

The entirety of the facts and procedural history surrounding this case are lengthy and appear to be complex; however, the relevant facts and procedural history that form the basis of this appeal are relatively straightforward, as are the relevant legal issues. On June 3, 2007, King sued Dollar & Eads, P.C., Rhonda Dollar, and Phillip Eads[1] (hereinafter collectively referred to as “Dollar & Eads”), Peggy G. Northcutt a/k/a Peggy G. Fannin (“Northcutt”), who was employed by Dollar & Eads, P.C., and A1 Northcutt (all hereinafter collectively referred to as “the defendants”) asserting various claims related to the alleged embezzlement of funds belonging to dissolved entities in which King and Ivey were members. In a separate action (case number CV-05-197, Ivey sued the defendants based on the same alleged conduct. King filed a motion to consolidate his action against the defendants with Ivey’s action against the defendants. The case-action summary indicates that King’s motion to consolidate was “filed” and “docketed,” but nothing in the record indicates that the circuit court actually granted King’s motion or entered an order consolidating the actions. In some of the numerous orders entered by the circuit court it appears that the circuit court was perhaps operating under the assumption that King’s action and Ivey’s action had been consolidated. However, nothing in the record indicates *469 that the circuit court ever consolidated the actions. Therefore, for proposes of this appeal, we conclude that King’s action against the defendants and Ivey’s action against the defendants were not consolidated, and only King’s action is the subject of this appeal.
It is undisputed that King and Ivey entered into a settlement agreement with Dollar & Eads, which settled King’s and Ivey’s respective claims against Dollar & Eads for $627,684 (“the settlement”). King set forth some of the relevant undisputed facts leading up to and following the settlement in a motion for a summary judgment filed by King, the legal arguments of which will be discussed below, as follows:
“3. In November of 2007, King and Ivey attended a mediation with North-cutt’s insurer![2]] and agreed that the insurer would pay a lump sum of $627,684 to King and Ivey. King and Ivey further agreed that the settlement check would be deposited into Ivey’s trust fund account and that they would divide the amount among themselves— 10% to Warren [a third party who, along with King and Ivey, was also a member of one of the entities being dissolved] and 45% to each King and Ivey....
“4. King and Ivey agreed to split the money according to the respective ownership interests of the dissolving entities. Restated King would receive $302,606.50 and Ivey would receive $302,606.50 after Warren’s 10% ownership interest in King, Ivey & Warren was deducted ‘off the top’ of the settlement funds....
“5. King agreed to allow Ivey to deposit the $627,684 into Ivey’s attorney trust account based on the representation made by Ivey that the funds would be properly distributed in accordance with the terms agreed to at the November 2007 mediation. Ivey agreed to deposit the money into his attorney trust account....
“6. On November 21, 2007, Mr. Ivey received a check in the amount of $627,684 made payable to ‘Ivey & Rags-dale, attorneys for ... Ivey and ... King.’ ...
“7. Again, the parties to the check are ... Ivey and ... King. Consequently, the only necessary parties to this [a]ction and this motion are ... Ivey and ... King.
“8. Both King and Ivey endorsed the two party check so that it could be deposited into Ivey’s trust account as agreed....
“9. Since then, King and/or his agents have made numerous requests for his portion of the settlement monies. ...
“10. Ivey has repeatedly refused to distribute any money to King, and now claims that King is only entitled to $269,370.”
(Footnotes omitted.) As set forth above, King and Ivey agreed to divide the settlement amount of $627,684 between them based on their ownership interests in the various dissolved entities. Therefore, King and Ivey’s disagreement over the amount of the settlement to which each one is entitled is based on a disagreement over King’s and Ivey’s respective ownership interests in the various dissolved entities that are the subject of the settlement. Ivey’s claim that King is entitled to $269,370 is based on Ivey’s computation of King’s ownership interest in each of the *470 dissolved entities; Ivey has never disputed that King is entitled to at least $269,370.
On October 6, 2008, Dollar <& Eads filed a motion for “a pro tanto order of dismissal in accordance with settlement agreement,” in which they requested to be dismissed from King’s action against them based on the settlement. On October 21, 2008, King filed a response in opposition to Dollar & Eads’s motion requesting that Dollar & Eads not be dismissed based on Ivey’s refusal to pay King his portion of the settlement.
On October 30, 2008, King filed an amended complaint adding Ivey, “in his capacity as Attorney Trustee of certain trust funds,” as a defendant and seeking to compel Ivey to pay King his portion of the settlement. In his amended complaint, King requested that the circuit court grant him relief, as follows:
“Wherefore, premises considered, Mr. King respectfully prays that this [cjourt issue an order requiring Mr. Ivey ... to:
“Either:
“(a) Immediately pay Mr. King $313,842 (50% of the $627,684).[3]

“Or:

“(b) Immediately pay to Mr. King the undisputed amount of $269,370 and immediately pay into the [cjourt the disputed amount of $358,472.[4] If Mr. Ivey selects ‘option (b)’, then Mr. Ivey is contending/admitting that there is a disputed portion. In such a case, Mr. King respectfully moves the [cjourt to immediately (1) appoint a special Master with CPA credentials to (i) perform an accounting of Ivey’s trust account (ii) perform an accounting of the $627,684 and (iii) prepare a distribution plan for the $358,472; all for the Court’s review pursuant to Ala. Rule Civ. Proc. 53 and (2) appoint an attorney to serve as special fiduciary under the Ala.Code [1975,] § 19-3B-1001(b)(5).”
Ivey filed a motion to dismiss King’s amended complaint based on King’s alleged failure to add certain indispensable parties; Ivey did not specify which parties were indispensable, nor did he explain why he believed that any other parties needed to be added. King filed a response. Ivey’s motion to dismiss was later denied, and Ivey filed an answer to King’s amended complaint.
On February 24, 2009, King filed a motion he entitled a “[§ j 6-6-740[, Ala.Code 1975,] Motion” in which he requested that the circuit court “enter a [sjummary [ojr-der” under § 6-6-740, Ala.Code 1975, on his claim against Ivey. Section 6-6-740 states:
“(a) Judgment may, in like manner, be summarily entered against any attorney-at-law in this state who fails to pay over money collected by him or deliver personal property recovered by him in that capacity, whether by an action or otherwise, on demand made by the per *471 son entitled thereto, his agent or attorney for the amount collected or the value of the property recovered, less the amount due the attorney for fees or compensation for services, interest thereon, and damages at the rate of five percent a month, after such demand, or the aggregate amount, in the circuit court of the county in which such attorney resides or, if he has no known place of residence in this state, in the circuit court of any county, on three days’ personal notice; but such attorney may, if a doubt exists as to the right of the person making the demand or if there is a dispute as to the compensation due the attorney for the collection or recovery of the money or property, pay the money into court or turn the property over to the sheriff at the trial of such motion and have such questions there decided without being liable for interest or damages.
“(b) The court may require the party claiming the money or property to establish his right thereto and, in determining the question of compensation, may examine both parties. The court may award costs, including the sheriffs reasonable expenses for preserving the property, at its discretion.”
King requested that the circuit court enter “an immediate [o]rder pursuant to [§] 6-6-740 requiring Ivey to pay to King the amount which he demands or, alternatively, pay at least that amount to the [circuit] [c]ourt.”
On May 12, 2010, the circuit court entered an order granting King’s § 6-6-740 motion, among other pending motions, as follows: “Ivey is hereby [o]rdered to pay $313,842[5] to the Clerk of the Court of Walker County on or before 5:00 p.m. on the third day following personal notice of this Order on Ivey.” On May 17, 2010, based on a “motion to alter, amend or vacate” the circuit court’s order filed by Ivey, the circuit court entered an order staying its May 12, 2010, order until a hearing could be held on the matter.
On June 25, 2010, the circuit court entered another order, pursuant to § 6-6-740, requiring Ivey to pay $313,842 to the clerk of the circuit court by June 28, 2010. On June 28, 2010, Ivey filed a “motion to alter, amend or vacate” the circuit court’s order; the circuit court set Ivey’s motion for a hearing to be held on July 12, 2010. On July 12, 2010, the circuit court held the hearing on Ivey’s “motion to alter, amend or vacate” the circuit court’s June 25, 2010, order requiring Ivey to pay to the clerk of the circuit court $313,842 pursuant to § 6-6-740. The circuit court granted in part Ivey’s “motion to alter, amend or vacate” its June 25, 2010, order by orally amending its order, at the parties’ request, to require Ivey to pay the clerk of the circuit court $302,606.50 instead of $313,842. The circuit court ordered Ivey to pay to the clerk of the circuit court the ordered amount within seven days of the hearing; Ivey did not comply with the circuit court’s order.
On July 14, 2010, the circuit court entered an order granting Dollar & Eads’s motion to be dismissed based on the settlement of King’s claims against them. On August 31, 2011, the circuit court entered an order dismissing all of King’s claims against Northcutt and A1 Northcutt; Northcutt and A1 Northcutt were subsequently dismissed from King’s action. Therefore, as of August 31, 2011, Ivey was the only defendant remaining in King’s action.
Also on August 31, 2011, in the same order, the circuit court ordered Ivey to respond to certain pending discovery re *472 quests. Specifically, the circuit court ordered that
“(3) ... Ivey shall produce all records previously requested by [King] which is that ... Ivey shall produce all banking records of both his account and his [t]rust account or any banking accounts for which any of the monies were placed that are the subject of this lawsuit from the year 2007 to the present time, or the said ... Ivey shall explain in a sworn response the whereabouts of those funds.”
On November 21, 2011, Ivey filed two motions objecting to notices of intent to serve subpoenas on nonparties by King. In his first motion, Ivey explained that King’s subpoena sought “to have Gasey Cooper Baron, a non-party, produce various items, including, but not limited to, all of her financial records from ‘January 1, 2008, to present,’ and all communications and photographs between Ms. Barton and Mr. Ivey.” Ivey requested that King’s action against him be stayed, arguing that “this case, in its entirety, is due to be stayed by this Honorable Court due to a reported pending criminal investigation of [Ivey] arising from the facts alleged in this matter, and that a stay of the case should also work a stay of the proposed subpoena.” In his second motion, Ivey also requested a motion to stay King’s action against him, arguing that “this case is the subject of an ongoing criminal investigation.” Ivey attached his own affidavit to his second motion; that affidavit states, in pertinent part:
“Within the last month, I have been made aware of Jesse Serelles, an investigator for the Attorney General’s office, who interviewed my former partner, Barry Ragsdale. Mr. Serelles told Barry that he was investigating allegations that I had stolen money from ... King. He told Barry that ... King was ‘hot’ about the matter, and that he was ‘pushing the issue.’ ”
Also on November 21, 2011, Ivey filed a motion for a protective order and a motion for a stay of King’s action against him based on his right against self-incrimination set forth in the Fifth Amendment to the United States Constitution.
On December 27, 2011, King filed a motion for a default judgment against Ivey based on 1) Ivey’s failure to comply with the circuit court’s June 25, 2010, order, as amended on July 12, 2010, and 2) Ivey’s failure to comply with the portion of the circuit court’s August 31, 2011, order requiring Ivey to comply with King’s pending discovery requests. King also attached to his default-judgment motion a letter dated December 20, 2011, and addressed to King from Assistant Attorney General John Gibbs, which states:
“As we discussed in our telephone conversation, I am writing to inform you that ... Ivey will not be prosecuted based on your complaint. Your criminal complaint to this office was investigated but that investigation has been completed and that case has been closed.”
Also on December 27, 2011, King filed a motion to strike Ivey’s affidavit, the pertinent part of which is set forth above. King argued that Ivey had no personal knowledge of any pending or potential criminal investigation and that Ivey’s affidavit was “hearsay within hearsay.” Also on December 27, 2011, King filed a motion for a summary judgment based on several theories of recovery, some of which he had not previously asserted against Ivey. King argued that he was entitled to a summary judgment against Ivey under theories of breach of contract, breach of fiduciary duty, fraud, and negligence per se based on Ivey’s alleged violation of Rule 1.15 of the Alabama Rules of Professional Conduct.
*473 On January 13, 2012, the circuit court entered an order addressing numerous of the pending motions. Specifically, the circuit court denied Ivey’s motion to stay the proceedings based on his Fifth Amendment right against self-incrimination and denied Ivey’s motion for a protective order. The circuit court granted King’s motion to strike Ivey’s affidavit in which Ivey testified that the Attorney General’s Office was investigating Ivey and might potentially bring criminal charges against him. Lastly, the circuit court ordered that “Ivey shall furnish all discovery required under Paragraph (3) of this Court’s Order dated August 31, 2011, [6] within fourteen (14) days prior to his deposition or his failure to do so will lead to his default.”
On February 10, 2012, Ivey filed a motion asking the circuit court to reconsider its January 13, 2012, order. Ivey requested that the circuit court “reconsider its prior ruling denying [Ivey’s] [mjotion to [s]tay based upon Fifth Amendment grounds.... ” Ivey persisted in his argument that a criminal investigation related to King’s action against him was ongoing and, in support of his argument, attached to his motion to reconsider his own affidavit testimony, which states, in pertinent part:
“3. After receiving a copy of a letter filed by Mr. King, written by John Gibbs of the Alabama Attorney General’s Office, I began my own inquiry and investigation as to whether there was a continuing and pending investigation of a criminal nature arising out of the facts and circumstances of my dispute with Mr. King.
“4. Contrary to Mr. King’s argument from his interpretation of Mr. Gibbs’ letter, there is in fact a continuing investigation. Investigators are currently seeking to interview former employees, and are basing their continuing investigation relying upon testimony from Peggy Northcutt.”
On March 12, 2012, Lisa Ivey, Ivey’s attorney, filed her own affidavit pursuant to Rule 56(f), Ala. R. Civ. P.,[7] which states, in pertinent part:
“3. Pursuant to Alabama Rules of Civil Procedure Rule 56(f), my client in the above-referenced case, ... Ivey ..., is opposed to the granting of summary judgment in this case, but cannot present by affidavit facts essential to justify his opposition, for the reason that such opposition would cause him to abrogate his Constitutional rights under the State and Federal Constitutions under which he is protected from self-incrimination. Attached is a true and correct copy of an article in the Daily Mountain Eagle, a newspaper of general circulation in Walker County, Alabama. I also request that this Honorable Court take judicial notice of case number CC 2012- *474 114, currently pending in the Circuit Court of Walker County, Alabama.”
The referenced newspaper article, which was published on February 24, 2012, states, in pertinent part:
“Attorney General Luther Strange announced Thursday the arrest of disbarred Jasper lawyer Garve Woodrow Ivey Jr. for multiple felony counts of theft. Ivey, 60, surrendered Thursday afternoon at the Walker County Sheriffs Office. Bail was set at $210,000.... Strange’s office presented evidence to a Walker County grand jury Thursday morning, resulting in Ivey’s indictment. Specifically, the indictment charges Ivey with: One count of second-degree theft of a check or currency valued between $500 and $2,500; and Ten counts of first-degree theft of a check or currency valued at more than $2,500. The attorney general’s office said no further information about the investigation or about Ivey’s alleged crimes, other than that stated in the indictment, may be released at this time.”
On April 11, 2012, the circuit court entered the following order in favor of King:
“The present dispute remaining in this [ajction is between two [pjarties that happen to be lawyers — King and Ivey. The two [pjarties received a joint compensatory recovery as parties, and not as lawyers, in 2007 and were thereafter unable to divide those funds without this litigation. The [pjarties agree that Ivey took possession of all of the disputed funds. King moves for summary judgment under [§] 6-6-740, summary judgment as to all claims and for default judgment for what King contends is King’s portion of the disputed funds. The Court grants all three motions as follows:
“I. Plaintiffs (King’s) Motion for Summary Judgment Pursuant to [§] 6-6-740, dated December 27, 2011.
“1. In essence, King contends and sufficiently establishes under Rule 56(a)[, Ala. R. Civ. P.,J that King’s portion of the disputed funds is $302,660.50 [sic], (b) that Ivey has wrongfully detained those funds since November of 2007, (c) that King made a formal demand that the same be paid either to him, the [cjourt or the sheriff pursuant to ... [§] 6-6-740 on or about January 10, 2008, and (d) that King is entitled to those funds together with five percent (5%) interest per month as set forth in ... [§] 6-6-740. In any event, King’s motion is fully supported on each issue.
“2. Rule 56(e)[, Ala. R. Civ. P.,J requires the responding [pjarty to contradict the movant’s factual allegations:
“ ‘An adverse party may not rest upon the mere allegations or denials of the adverse party’s pleadings, but the adverse party’s response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against him.’
“Additionally, Rule 56(f) permits a[p]arty to secure a continuance of the Rule 56 hearing by submitting an affidavit stating why evidentiary materials are unavailable. Rule 56(f). However, that affidavit must (a) identify and establish a proper basis of unavailability of evidence and (b) must identify with specificity the factual allegations which the responding [pjarty will controvert when evidence becomes available. See e.g., Rule 56.
“3. Defendant Ivey did not respond to King’s [§ 6-6-J740 motion for summary judgment with any Rule 56(e) competent evidence whatsoever, Rather, *475 the only response from Ivey was an affidavit by his counsel purporting to assert Ivey’s alleged Fifth Amendment rights. This is insufficient because (a) the indictment Ivey relies on does not relate to these proceedings, (b) Ivey’s motion to stay was denied and not appealed and (c) the Fifth Amendment, even if it had applied, does not per se preclude summary judgment.
“The Indictment. First, the [cjourt has taken judicial notice of the current pending indictment against Mr. Ivey in CC-2012-114.... That indictment does not involve any of the allegations by King against Ivey. Restated, Ivey ‘can point to no criminal investigation relating to him ... ’ Braden v. Jim Bishop Chevrolet, 897 So.2d 1040, 1047 (Ala. 2004).... Consequently, the affidavit of Ivey’s counsel is insufficient to trigger Fifth Amendment protection sufficient to fulfill the Rule 56(f) requirements. See, e.g., id. Second, the affidavit of counsel does not in any way identify which factual allegations [Ivey] would or might controvert in the future. Rule 56. Finally, Defendant Ivey does not provide this [cjourt with any opposition to the legal theories advanced by [King] in [his] motion for summary judgment. Rule 56.
“Ivey’s Motion To Stay Was Denied. Where the Rule 56 respondent’s motion to stay is denied, the request for stay cannot be used to satisfy Rule 56(f). This [cjourt denied Ivey’s motion to stay by verbal [ojrder on January 12, 2012, and written [ojrder dated January 13, 2012. The time for interlocutory appeal lapsed on January 27, 2012. Since that time, Ivey has produced no new evidence ... related to a criminal investigation arising from Ivey’s dealings with King.
“The Fifth Amendment Does Not Preclude Summary Judgment. The silence of a respondent does create a civil inference of guilt. See Baxter v. Palmigi-ano, 425 U.S. 308, 318 (1976). The Fifth Amendment to the Constitution precludes summary judgment where this inference is the only evidence supporting the motion. Id. However, if the other evidence supporting the movant’s motion is sufficient under Rule 56, then the respondent’s assertion of the Fifth Amendment privilege shall not preclude summary judgment. Id. As noted, the facts established by King were and are sufficient and uncontroverted under Rule 56.
“4. Now therefore, partial summary judgment is hereby entered against Defendant Ivey and for Plaintiff King on King’s [§] 6-6-740 count in the amount of $302,660.50 [sic] as of January of 2008 with five percent (5%) per month of interest through the date of this judgment representing an aggregate of $1,044,181.18 as of the date of this judg-
[[Image here]]
“II. Plaintiffs Motion for (Partial) Summary Judgment.
“6. The contention and facts set forth by King in his motion for (partial) summary judgment dated December 27, 2011, as to the balance of his theories of recovery are essentially identical to those set forth in support of his motion for summary judgment under [§] 6-6-740. However, King’s motion for summary judgment as to every other theory is more specific in that it (a) sets out each of the allegations and proof for breach of contract ..., (b) lists all of the required allegations and proof with respect to breach of fiduciary duty consistent with Alabama Code [1975,] [§§] 19-3B-401 & 402 and the decisions in Teal v. Pleasant Grove Local Union #201, *476 200 Ala. 23, 25[, 75 So. 335] (1917); Harrison, Adm’r, and Gardner, Adm’r v. Mock, et al, 10 Ala. 185, 193 (1846), (c) establishes the facts and allegations with respect to fraud ... and (d) enumerates the elements and allegations for negligence per se and violation of the Alabama Rules of Professional Conduct 1.15 consistent with the decision in Dickinson v. Land Developers Construction Company, 882 So.2d 291, 302 (Ala.2003), and Alabama Rules of Professional Responsibility Rule 1.15. King’s motion is fully supported on each issue.
“7. As noted above, in the discussion of King’s [§] 6-6-740 motion, Rule 56 requires a meaningful response under Rule 56(e) or 56(f). Because Ivey filed nothing more than the ineffective affidavit of counsel discussed above, Defendant Ivey has again failed to (a) controvert any of the facts as presented and established by the movant (King) or (b) question in any way any of the cited law.
“8. Now therefore, partial summary judgment is hereby entered in favor of King and against Defendant Ivey in the amount of $302,660.50 [sic] representing only economic compensatory damages and based on all of the theories set forth above. To the extent that the recovery is based in contract, prejudgment interest shall accrue on this amount from January 10, 2008, to the date of this judgment at the rate of six percent consistent with Alabama Code [1975,] [§] 8-8-1. The [c]ourt reserves jurisdiction to determine all other compensatory and punitive damages at future proceedings.
“III. Motion for Default Judgment.
“10. On August 31, 2011, this [c]ourt [ojrdered ... Ivey to produce certain records to King consisting primarily of banking and accounting records related to his trust account. Order dated August 31, 2011 at ¶ (3). Ivey refused to do this. King filed a motion for default judgment on December 27, 2011, based on Ivey’s violation of this [c]ourt’s [orders and failure to participate in discovery. This [c]ourt set King’s motion for hearing on January 12, 2012. The hearing was held as scheduled and all [parties attended by and through counsel and all counsel had the opportunity to present evidence, legal authority and argument. Ivey’s sole defense was his request for a ‘stay’ based on alleged pending criminal proceedings associated with Ivey’s dealings with King. As previously noted, there is ample evidence that there was and is no such peril.
“11. By [o]rder dated January 13, 2012, this [c]ourt denied Ivey’s motion to stay and further ordered that Ivey would furnish all discovery required under ¶ (3) of this [c]ourt’s [o]rder dated August 31, 2011, to King within fourteen days prior to his (Ivey’s) scheduled deposition, i.e., at the latest, February 13, 2012 — and that ‘his failure to do so will lead to his default.’ The [c]ourt did not rule on King’s motion for default at that time, but reserved it for future disposition.
“12. On January 27, 2012, the time for interlocutory appeal of this Court’s January 13, [2012,] [ojrder expired. Ivey took no appeal. As of February 13, 2012, Ivey had not complied with this [c]ourt’s express [o]rder. As of the entry of this [o]rder, Ivey has still not complied with this [c]ourt’s August 31, 2011, [o]rder or its January 13, 2012, [ojrder — i.e., Ivey has not appeared for deposition or produced the documents. Since that time, Ivey has produced no new evidence ... related to a criminal investigation arising from Ivey’s dealings with King.
*477 “13. It is well settled that a default judgment is proper against a party which fails to participate in discovery. Ex parte Blake, 624 So.2d 528, 531 (Ala. 1993) (entry of default judgment affirmed against the party which repeatedly refused to appear for deposition or produce documents); Ragan v. Blazon Flexible Flyer, Inc., 590 So.2d 882, 883 (Ala.1991) (affirming dismissal of the plaintiff’s claims because of his failure to identify an expert witness within the time set by the [cjourt); Napier v. McDougal, 601 So.2d 446, 448 (Ala.1992) (affirming dismissal where the plaintiff failed to answer interrogatories within the time period set by the [cjourt, notwithstanding the plaintiffs service of unsigned interrogatory responses prior to the deadline); Hill v. Hawkins, 582 So.2d 1105, 1106 (Ala. 1991) (‘failure of a plaintiff to attempt to serve the defendant with process within a reasonable time may amount to a failure to prosecute the action, warranting a dismissal of the case.’).
“14. Now therefore, a default judgment is hereby entered against Ivey for failure to participate in discovery and for further violation of the [cjourt’s [o]r-ders. It appearing of record that the liquidable amount of the compensatory damages claimed by King is $302,660.50 [sic], this [c]ourt, therefore, enters a default judgment in favor of King and against Ivey for economic compensatory damages in that amount with prejudgment interest accruing at six percent from January 10, 2008, through the date of this judgment. The [c]ourt reserves jurisdiction to determine all other compensatory and punitive damages at future proceedings to include an award of attorney’s fees under any applicable theory [and] to include sanctions under Rule 37 and otherwise.
“18. The judgments set forth in Sections I, II and III are not cumulative but based on alternative grounds.”[8]
(Capitalization, emphasis, and footnotes omitted.)
On May 10, 2012, Ivey filed a motion to alter, amend, or vacate the circuit court’s April 11, 2012, judgment pursuant to Rule 59(e), Ala. R. Civ. P. Ivey’s postjudgment motion was denied by operation of law pursuant to Rule 59.1, Ala. R. Civ. P., on August 8, 2012. Ivey appealed.

Standard of Review

“ ‘The standard of review applicable to a summary judgment is the same as the standard for granting the *478 motion.... ’ McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
“‘A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present “substantial evidence” creating a genuine issue of material fact — “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).’
“Capital Alliance Ins. Co. v. Thoroughr-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994): Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004).”
Pritchett v. ICN Med. Alliance, Inc., 938 So.2d 933, 935 (Ala.2006).

Discussion

First, Ivey argues that “[t]his Court lacks jurisdiction over this appeal because the [circuit] court erred when it certified its orders of April 11, 2012, as final and appealable when the orders lacked the requisite elements of finality and did not fully dispose of the claims between the parties.” Ivey’s brief, at p. 14. The finality of the circuit court’s April 11, 2012, judgment is discussed in note 8 supra. The circuit court’s April 11, 2012, judgment was a final judgment because it disposed of King’s one claim against Ivey, the only defendant remaining in King’s action. The circuit court ruled in King’s favor on three alternate grounds, each of which, as the circuit court noted in its April 11, 2012, judgment, was mutually exclusive. The circuit court’s judgment was a final judgment; thus, Ivey’s argument that this Court lacks jurisdiction over this appeal based on an inappropriate Rule 54(b), Ala. R. Civ. P., certification is irrelevant and without merit.
Next, Ivey argues that “[t]he [circuit] court exceeded its discretion when it refused to stay this case and [entered its April 11, 2012, judgment] against Ivey when Ivey had a reasonable apprehension of self-incrimination had he participated in the discovery process or set forth substantive opposition to the motions for summary judgment.” Ivey’s brief, at p. 22. Ivey argues that “the basis of King’s claim [against Ivey was] factually identical to the basis for the indictment against Ivey.” Id., at p. 29. Ivey further argues that “if [he] had been forced to respond in this case to discovery relating to the ‘tracing’ of monies through his trust account, information could have been gathered against him to be used in the pending criminal cases.” Id. Ivey’s argument that the circuit court erred in denying his motion to stay is apparently based on the circuit court’s August 31, 2011, order in which the circuit court ordered Ivey to respond to King’s pending discovery requests, which sought information concerning the state of Ivey’s trust account and the current whereabouts of the settlement moneys. Those discov *479 ery requests are unrelated to King’s § 6-6-740 claim against Ivey.
As set forth above, § 6-6-740 provides that “[judgment may ... be summarily entered against any attorney-at-law in this state who fails to pay over money collected by him ... in that capacity, whether by an action or otherwise, on demand made by the person entitled thereto.... ” Ivey has never disputed that King is entitled to a portion of the settlement; specifically, Ivey alleges that King is entitled to $269,370, while King alleges that he is entitled to $302,606.50. The only genuine issue of material fact related to King’s § 6-6-740 claim is what portion of the settlement King is entitled to. As set forth above, the answer to that question is found in King’s and Ivey’s respective ownership interests in the dissolving entities at the time the settlement was entered into. Ivey has never disputed or argued that King’s § 6-6-740 claim involves any further discovery than this. Discovery related to that question will not be focused on the state of Ivey’s trust account or the current whereabouts of the settlement— which is what Ivey alleges could lead to incriminating evidence — but upon the respective ownership interests of King and Ivey in the dissolving entities at the time the settlement was entered into. Therefore, Ivey’s argument that the circuit court erred in denying his motion to stay is irrelevant to King’s § 6-6-740 claim; Ivey could have easily produced an affidavit or documentary evidence without fear of self-incrimination establishing his ownership interest in the dissolving entities at the time King and Ivey entered into the settlement, which would have been substantial evidence rebutting King’s substantial evidence in support of his summary-judgment motion on his § 6-6-740 claim.
Ivey does not raise any other argument and does not dispute that King provided substantial evidence to support his § 6-6-740 claim. We need not consider the alternative grounds of the circuit court’s April 11, 2012, judgment against Ivey because the circuit court explicitly stated in its judgment that “Section I, II and III are not cumulative but based on alternative grounds.”

Conclusion

Based on the foregoing, we affirm the circuit court’s judgment.
AFFIRMED.
MOORE, C.J., and STUART, SHAW, and WISE, JJ., concur.

. Dollar & Eads, P.C., founded by Rhonda Dollar and Phillip Eads, is a professional corporation that provides accounting services to businesses and individuals. Dollar & Eads, P.C., provided King and Ivey, and their law firms, accounting services and financial management over the course of 30 years. North-cutt was employed by Dollar & Eads, P.C.; Northcutt managed King’s account. A1 Northcutt is Northcutt's husband.

. This is apparently a reference to the insurer of Northcutt’s employer, i.e., Dollar & Eads, P.C.

. $313,842, half of the settlement amount of $627,684, is the amount King initially claimed he was entitled to. Apparently, this was before King realized that Warren was entitled to 10% of the settlement amount related to the dissolution of King, Ivey & Warren. As set forth above, King later argued that he was entitled to $302,606.50.

. King does not explain why he believes the amount of $358,472 is the disputed amount. It is possible he was merely asking that the remainder, after deducting $269,370, be paid into court, although the math is incorrect. King has never argued that Ivey was not entitled to half of the $627,684 settlement amount. Therefore, it appears that the disputed amount of the $627,684 settlement amount would actually be the difference between what King claims to be his portion of the settlement amount ($302,606.50) and what Ivey claims to be King's portion of the settlement amount ($269,370), which is $33,236.50.

. See supra note 3.

. The cited paragraph, set forth above, states:
"(3) ... Ivey shall produce all records previously requested by [King] which is that ... Ivey shall produce all banking records of both his account and his [t]rust account or any banking accounts for which any of the monies were placed that are the subject of this lawsuit from the year 2007 to the present time, or the said ... Ivey shall explain in a sworn response the whereabouts of those funds.”

. Rule 56(f) provides:
"(f) When Evidentiary Matter Is Unavailable. Should it appear from the affidavits of a party opposing the motion that the party cannot, for reasons stated, present by affidavit facts essential to justify the party's opposition, the court may deny the motion for summary judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.”

. We note that the circuit court unnecessarily entered Rule 54(b), Ala. R. Civ. P., certifications as to each of its alternative grounds for ruling in King’s favor. As set forth above, King’s action and Ivey’s action were never consolidated. Dollar & Eads were dismissed from King's action on July 14, 2010, and Northcutt and A1 Northcutt were dismissed from King’s action on August 31, 2011. As of August 31, 2011, Ivey was the only defendant remaining in King’s action and King’s only claim against Ivey sought recovery of his portion of the settlement from Ivey. Although King may have relied upon several theories of recovery, King asserted only one claim against Ivey. See Scrushy v. Tucker, 955 So.2d 988, 998 (Ala.2006) (" ‘[W]hen a claimant presents a number of legal theories, but will be permitted to recover only on one of them, the bases for recovery are mutually exclusive, or simply presented in the alternative, and plaintiff has only a single claim for relief for purposes of Rule 54(b).’ ” (quoting 10 Charles Alan Wright et al., Federal Practice & Procedure § 2657 (3d ed. 1998) (footnotes omitted))). Therefore, the Rule 54(b) certifications included by the circuit court in its April 11, 2012, judgment were unnecessary because the judgment was a final judgment; it disposed of King’s only claim against Ivey, the only remaining defendant in King’s action.