PITTMAN, Judge.
Raymond P. Bahakel and Ambassador Limousine Service, Inc. (“Ambassador”), appeal from a summary judgment entered by the Tuscaloosa Circuit Court against Ambassador and in favor of Drivetrain Automotive Supercenter, Inc. (“Drivetrain”). We reverse and remand.

Procedural History

Bahakel is the sole shareholder of Ambassador, which operates a limousine business. Pursuant to that business, Ambassador owns a modified 2005 Ford Excursion sport-utility vehicle that it uses as a-stretch limousine (“the vehicle”). Ba-hakel commenced a lawsuit against Drive-train, arising out of an agreement by Dri-vetrain to perform work on the vehicle. The plaintiffs were identified in the complaint as “Raymond P. Bahakel, individually and d/b/a Ambassador Limousine Service, Inc.” It is undisputed that Ambassador is a separate legal entity incorporated in Alabama.
The complaint asserted that Drivetrain had agreed to replace the vinyl top of the vehicle and had, after performing work on the vehicle, submitted an invoice to Bahak-el stating that Ambassador owed $31,035.65 for the work. Drivetrain refused to return the vehicle unless that sum was paid.[1]
The complaint asserted that Drivetrain was not entitled to the amount shown on the invoice and asserted causes of action against Drivetrain based on various theories of recovery. The complaint also requested a judgment declaring that Drive-train was not entitled to the amount claimed on the invoice and that Drivetrain was improperly withholding possession of the vehicle.
In response to the complaint, Drivetrain filed a counterclaim in which it asserted that “Ambassador Limousine Service, Inc. is an Alabama Corporation,” that Drive-train had entered into a contract with Ambassador whereby Drivetrain agreed to perform work on the vehicle, that Drive-train had performed work pursuant to that contract, and that Drivetrain had not been paid for its work. Drivetrain asserted causes of action against the “plaintifficoun-terclaim defendant” alleging open account, breach of contract, quantum meruit, and unjust enrichment.[2]
Drivetrain filed a motion for a summary judgment on the claims asserted against it and a motion for a summary judgment on Drivetrain’s counterclaim. ■ Bahakel and Ambassador submitted a response to Dri-vetrain’s motions, which was supported in *517 part by an affidavit executed by Bahakel. Drivetrain filed a motion to strike portions of Bahakel’s affidavit, which the trial court granted.
The trial court granted Drivetrain’s motion for a summary judgment on the claims alleged against it, granted Drivetrain’s motion for a summary judgment on its counterclaim against Ambassador, and awarded Drivetrain $31,035.16 in compensatory damages against Ambassador.[3] Bahakel and Ambassador filed postjudgment motions requesting the trial court to reconsider its ruling striking portions of Bahakel’s affidavit and requesting the trial court to vacate the summary judgments in favor of Drivetrain. The trial court denied those motions, and Bahakel and Ambassador appealed to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
On appeal, Bahakel and Ambassador challenge only the trial court’s summary judgment in favor of Drivetrain on its counterclaim. They do not appeal from the trial court’s summary judgment on the claims against Drivetrain.[4]

Material Facts

The vehicle was manufactured in 2005 and has been driven approximately 130,000 miles. Bahakel testified during deposition that he had purchased a new vinyl top for the vehicle, that he had had the new top shipped to Drivetrain, and that Jeffrey Menefee, who is a representative of Drive-train, had informed Bahakel that Drive-train would install the new top on the vehicle. Bahakel also testified that Mene-fee informed Bahakel that he estimated that Drivetrain might expend up to 100 hours of labor in order to replace the top:
“I asked [Menefee] what would it take. He — how much would it be. He said he wasn’t sure of the exact total, but it could run up to a hundred hours. I said, ouch. That’s a lot. He goes, well, I’m not sure that it’s going to run to that, but it could. If I take me and my two guys and we each work on it all day for three days, we can get this knocked out. So, I agreed to let him do it based on that.”
Bahakel testified that Menefee told Ba-hakel that Drivetrain’s hourly rate for the work would be “discounted],” although Bahakel admitted that he did not ask how much the hourly rate would be. Drive-train’s responses to interrogatories indicate that it charged Ambassador $50 per hour for body work and $75 per hour for mechanical work on the vehicle. According to Bahakel, Menefee also informed him that he and other laborers would complete the job but that Menefee would not charge for his own labor.
At some point after Drivetrain began working on the vehicle, rust was discovered on the roof of the vehicle beneath the old vinyl top. According to Bahakel, he was presented with the option of having the rust removed with a sandblaster, which would be less expensive than removing the rust by hand. Bahakel testified that Me-nefee informed Bahakel that Bahakel would be responsible for the cost of renting the sandblaster, which would be “a few *518 hundred dollars,” as well as the cost of the sand to use in the sandblaster, and that it would take one day’s worth of labor to remove the rust. Accordingly, Bahakel authorized Drivetrain to remove the rust. Ambassador and Bahakel assert that Dri-vetrain, however, invoiced Ambassador for over 40 hours of labor “for the sandblasting.” [5]
Bahakel testified that, several weeks before the vinyl-top-replacement job started, Drivetrain had painted the right side of the vehicle and that portions of the paint had later “bubbled up.” Bahakel also testified that, while replacing the vinyl top, Drivetrain’s workers had accidentally removed paint from a portion of the left side of the vehicle. According to Bahakel, Dri-vetrain had, without permission, fixed the mistakes on both sides of the vehicle during the vinyl-top-replacement job. Bahak-el testified that, although he had not been charged in the past for Drivetrain’s mistakes, he was charged for the repairs to the painting work.
Bahakel testified that, on one occasion before the job was finished, a representative of Drivetrain had requested that Dri-vetrain be paid $3,000 and had informed Bahakel that “the worst part of the job had been completed.” Later, however, Bahakel was presented with an invoice for $31,035.16. According to Bahakel and Ambassador, Ambassador was charged for a total of 547.4 hours of labor.[6]
Bahakel testified during deposition that, in the past, he had had vinyl tops replaced on other vehicles and that he had received estimates from other automotive shops for the same work performed by Drivetrain. In Bahakel’s opinion, a reasonable charge for Drivetrain’s work, including the rust removal, would have been between $5,000 and $10,000.
Bahakel and Ambassador also assert that Menefee charged Ambassador for 51.5 hours of his own work, despite allegedly promising Bahakel that Menefee would not charge for his time. In support of that averment, Bahakel and Ambassador rely on a copy of the invoice. Although the invoice does not clearly indicate how many hours Menefee, in particular, billed for his work, Drivetrain has not disputed the assertion that Menefee billed for 51.5 hours of work.
Finally, Bahakel and Ambassador assert that, after the job had been completed, Bahakel discovered that there were spots on the vinyl top, that there were footprints on the carpet in the vehicle, that an escape window “was allowing water to pour through it,” that the batteries of the vehicle were dead, that the paint on the vehicle had “thin spots” and “an orange peel type of effect,” and that the vinyl top was not “completely smooth or level.” Bahakel and Ambassador assert that Bahakel spent $1,345 to fix the damaged window.

Standard of Review

Our supreme court has recognized the following standard of review of a summary judgment:
*519 “We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Jefferson County Comm’n v. ECO Preservation Services, L.L.C., 788 So.2d 121 (Ala.2000) (quoting Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988)). Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmov-ant to present substantial evidence creating a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989). ‘Substantial evidence’ is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw. Jefferson County Comm’n v. ECO Preservation Servs., L.L.C., supra (citing Renfro v. Georgia Power Co., 604 So.2d 408 (Ala.1992)).”
Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala.2000).

Discussion

Standing

We note initially that Drivetrain asserts in its appellee’s brief to this court that, because the judgment at issue in this case was entered against Ambassador and not against Bahakel personally, Bahakel does not have standing to pursue this appeal. Regardless of the merits of that argument, it is not disputed that Ambassador would have standing to appeal.
Although no suggestion has been expressly made by Drivetrain, we reject any suggestion that Ambassador has not appealed from the judgment against it. The notice of appeal lists the appellants as “Raymond P. Bahakel, individually, and d/b/a Ambassador Limousine Service, Inc.” It is undisputed that the judgment was entered against Ambassador, although the trial court incorrectly identified Ambassador as “Ambassador Limousine, Inc.” It is also undisputed that Bahakel is the sole shareholder of Ambassador and that he makes decisions for Ambassador. Bahakel and Ambassador are represented by the same attorney who filed the notice of appeal.
Notices of appeal should be liberally construed. See Gollotte v. Peterbilt of Mobile, Inc., 582 So.2d 459, 462 (Ala.1991) (“This Court has, on many occasions, manifested a willingness to construe notices of appeal liberally.”); Edmondson v. Blakey, 341 So.2d 481, 484 (Ala.1976) (“The spirit of the [Alabama Rules of Appellate Procedure] is recognized and restated to insure the just, speedy and inexpensive determination of every appellate proceeding on its merits. The only jurisdictional rule in the entire rules is the timely filing of the notice of appeal. Nothing in the rules is designed to catch the unwary on technicalities.”); McLin v. State, 840 So.2d 937, 941 (Ala.Crim.App.2002) (considering the adequacy of a notice of appeal and stating that “both state and federal caselaw suggest that appellate rules should be liberally construed so as not to ‘catch the unwary on technicalities’ ” (quoting Edmondson, 341 So.2d at 483)). Notwithstanding what may have been an improper use of the abbreviation for the term “doing business as” in the notice of appeal, this court concludes that Ambassador has appealed from the judgment against it.

*520
Summary Judgment

Ambassador argues that the trial court erred in granting Drivetrain’s motion for a summary judgment because, Ambassador asserts, genuine issues of fact exist as to Drivetrain’s breach-of-contract claim. “The elements of a breach-of-contract claim are: (1) the existence of a valid contract binding upon the parties in the action, (2) the plaintiffs own performance, (3) the defendant’s nonperformance, or breach, and (4) damage.” Armstrong Bus. Servs., Inc. v. AmSouth Bank, 817 So.2d 665, 673 (Ala.2001).
Ambassador argues that there is at least a question of fact as to how much it had agreed to pay for the work to be performed by Drivetrain. We agree. Bahak-el testified during deposition that Menefee estimated that Drivetrain might expend up to 100 hours of labor to replace the vinyl top and that it would take approximately 1 day to remedy the rust problem, assertions that Drivetrain does not dispute. Ambassador, however, was billed for more than 500 hours of labor. Thus, Ambassador has demonstrated that there is a legitimate factual dispute in this matter as to how much Drivetrain was entitled to receive for the work it agreed to perform.
The trial court’s summary judgment in favor of Drivetrain is due to be reversed. We pretermit discussion of Ambassador’s other arguments for reversal of that judgment, as well as Ambassador’s arguments for reversal of the trial court’s order striking portions of Bahakel’s affidavit.
REVERSED AND REMANDED.
THOMPSON, P.J., and MOORE and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. It appears that the vehicle was returned to Bahakel after he submitted a replevin bond to the trial court clerk.

. Although Drivetrain’s counterclaim contains some typographical errors that make it somewhat unclear, this court is convinced that Drivetrain sought a judgment against Ambassador and not against Bahakel individually.

. The trial court’s judgment identifies "Ambassador Limousine, Inc.” as the judgment debtor. As noted, Ambassador’s correct name is Ambassador Limousine Service, Inc.

. Although Drivetrain relied only on a theory of breach-of-contract in support of its motion for a summary judgment on its counterclaim and expressly declined to waive its other theories of recovery, the trial court’s summary judgment in favor of Drivetrain is a final appealable judgment. Although supported by multiple theories, Drivetrain had only one "claim” against Ambassador for purposes of determining the finality of the judgment. See Ivey v. King, 142 So.3d 467, 477 n. 8 (Ala.2013).

. In support of that averment, Bahakel and Ambassador rely on a copy of the invoice submitted by Drivetrain. It is not entirely clear from that invoice exactly how many labor hours were expended in order to remedy the rust problem on the roof. Drivetrain, however, has not disputed the assertion that it expended 40 hours of labor on that aspect of its work on the vehicle.

. In support of that averment, Bahakel and Ambassador rely on a portion of the record containing the invoice submitted by Drive-train. Although they assert that Drivetrain billed Ambassador for 547.4 hours, the invoice appears to indicate that Drivetrain billed Ambassador for 502.4 hours. Drive-train has not disputed Bahakel and Ambassador's assertion regarding the number of hours Drivetrain billed.